# United States Court of Appeals
## For the First Circuit

No. 13-2307

MASSACHUSETTS DELIVERY ASSOCIATION,

Plaintiff, Appellant,

v.

MARTHA COAKLEY,
Attorney General of the Commonwealth of Massachusetts,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Lynch, Chief Judge,
Ripple* and Selya, Circuit Judges.

David C. Casey, with whom Christopher B. Kaczmarek, Stephen T. Melnick, and Littler Mendelson, P.C. were on brief for appellant.
Kate Comerford Todd, Steven P. Lehotsky, National Chamber Litigation Center, Inc., James C. Rehnquist, Kate E. MacLeman, William M. Jay, and Goodwin Procter LLP on brief for the Chamber of Commerce of the United States of America, amicus curiae.
Wesley S. Chused and Looney & Grossman LLP on brief for Massachusetts Motor Transportation Association, amicus curiae.
Peter Sacks, State Solicitor, with whom Martha Coakley, Attorney General of Massachusetts, and Pierce O. Cray, Kate J. Fitzpatrick, and Douglas S. Martland, Assistant Attorneys General, were on brief for appellee.

*Of the Seventh Circuit, sitting by designation.

Scott L. Nelson, Adina H. Rosenbaum, and Public Citizen Litigation Group on brief for Public Citizen, Inc., amicus curiae.

Harold L. Lichten, Shannon Liss-Riordan, Catherine Ruckelshaus, and National Employment Law Project on brief for Massachusetts Employment Lawyers Association and the National Employment Law Project, amici curiae.

---

September 30, 2014

---

**LYNCH, Chief Judge**.  The Federal Aviation Administration Authorization Act ("FAAAA") preempts any state law "related to a price, route, or service of any motor carrier . . . with respect to the transportation of property."  49 U.S.C. § 14501(c)(1).  In a previous appeal in this case, we held, contrary to the district court, that abstention under Younger v. Harris, 401 U.S. 37 (1971), was not appropriate and remanded.  Mass. Delivery Ass'n v. Coakley, 671 F.3d 33 (1st Cir. 2012) (hereinafter, "MDA I").  The question now presented is whether the express preemption provision of the FAAAA preempts one prong of the Massachusetts Independent Contractor Statute, Mass. Gen. Laws ch. 149, § 148B(a)(2), which requires that workers perform a service "outside the usual course of the business of the employer" to be classified as independent contractors.  The district court held that Section 148B(a)(2) escapes FAAAA preemption.  Finding that the district court did not sufficiently credit the broad language and legislative history of the FAAAA's express preemption provision, we reverse and remand.

## I.  Background

The Massachusetts Delivery Association ("MDA") is a non-profit trade organization representing same-day delivery companies in Massachusetts.  The MDA filed this action for a declaration that the "B Prong" of Section 148B is preempted by the FAAAA, and for an injunction barring the Attorney General from enforcing it against the MDA's members.  The MDA used one member company, X Pressman

-3-

Trucking & Courier, Inc. ("Xpressman"), as an exemplar for the purposes of this litigation.

Like other members, Xpressman relied heavily on independent contractors to provide same-day delivery services to its customers in Massachusetts and throughout New England. Roughly 58 couriers provide delivery services for Xpressman's clients as independent contractors. Xpressman's independent contractors are paid for each completed delivery, rather than by the hour or week, and they do not receive benefits such as health insurance or retirement. Xpressman has only 6 full-time and 2 part-time employees to oversee its administrative and warehouse functions. No employees perform courier functions.

However, Xpressman argues that, under Massachusetts law, it is required to designate the couriers as employees rather than as independent contractors. Section 148B sets up a three-part test to differentiate employees from independent contractors, as follows:

> For the purpose of this chapter and chapter 151, an individual performing any service, except as authorized under this chapter, shall be considered to be an employee under those chapters unless:
>
> > (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and

> (2) the service is performed outside the usual course of the business of the employer; and,
>
> (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

Mass. Gen. Laws ch. 149, § 148B(a) (2004).  The MDA argues that the couriers will always fail the "B Prong," or the second requirement, of Massachusetts's test for independent contractors, since these contractors perform delivery services within the usual course of business for the delivery companies.

The legislative purpose of Section 148B is "to protect employees from being deprived of the benefits enjoyed by employees through their misclassification as independent contractors."  MDA I, 671 F.3d at 36-37 (quoting Somers v. Converged Access, Inc., 911 N.E.2d 739, 749 (Mass. 2009)).  An "employee" classification under Section 148B triggers legal requirements on the "employers" under various wage and employment laws.[1]  See id. at 36.  If an employing entity improperly classifies an employee as an independent contractor under Section 148B, a variety of sanctions is available.

---

[1]  The parties dispute which Massachusetts statutes are triggered by the classification of a courier as an employee, instead of an independent contractor.  We previously noted that the classification was relevant for chapters 62B, 149, 151, and 152 of the Massachusetts General Laws.  MDA I, 671 F.3d at 36.  The Attorney General disagrees with our inclusion of chapters 62B and 152, but concedes the remaining chapters are applicable.

Id. at 37.  Actions for failure to comply with Section 148B can be pursued by the Commonwealth, or by the employees themselves.  Id.

According to the MDA, being forced to treat the couriers as employees, rather than independent contractors, "would profoundly alter Xpressman's business model as well as the prices, routes and services it offers customers."  Xpressman has provided evidence as to the changes that would ensue to recruiting, interviewing, and hiring; the need for human resources management; and the increased compensation, fringe benefits, and taxes.  It provided evidence that routes would also change since couriers treated as employees would have to drive to and from Xpressman's facility, would have less flexibility to accept short routes, and could not drive the long routes without a mandatory break.  Finally, Xpressman contends that it would no longer be able to provide on-demand services with employees.  "All told, converting independent contractor-couriers to employees would nearly double Xpressman's labor costs . . . annually."

The FAAAA expressly preempts certain state laws relating to motor carriers.  Specifically, the FAAAA states:

> Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private

-6-

> carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1) (2005).

The MDA moved for summary judgment, arguing that the FAAAA preempts the B Prong, the second requirement, of Section 148B. The Attorney General cross-moved for summary judgment on all counts, arguing that the case does not present a justiciable case or controversy. In the event that summary judgment was not granted in her favor, the Attorney General argued that the FAAAA does not preempt Section 148B and asked for additional discovery pursuant to Federal Rule of Civil Procedure 56(d). The Attorney General subsequently moved to compel additional deposition time under Federal Rule of Civil Procedure 30(d)(1), and the further production of documents.

The district court found a justiciable case or controversy and denied the Attorney General's cross-motion for summary judgment on this ground. The district court held that the FAAAA does not preempt Section 148B, and dismissed the MDA's preemption claims on the merits. Finally, the district court denied as moot the Attorney General's motion to compel since it sought information solely related to the now-dismissed preemption claims. The MDA appealed the district court's holding.

## II.  Justiciability

In her brief, the Attorney General argues that the district court erred in ruling that the MDA alleged a justiciable case or controversy.  The Attorney General failed to cross-appeal the district court's ruling on this issue.  Generally, "[a] party who neglects to file a cross-appeal may not use his opponent's appeal as a vehicle for attacking a final judgment in an effort to diminish the appealing party's rights thereunder."  Sueiro Vázquez v. Torregrosa de la Rosa, 494 F.3d 227, 232 (1st Cir. 2007) (quoting Figueroa v. Rivera, 147 F.3d 77, 81 (1st Cir. 1998)).  Here, however, we will review the Attorney General's argument since it concerns our own jurisdiction as well.  See, e.g., United Seniors Ass'n, Inc. v. Philip Morris USA, 500 F.3d 19, 23 (1st Cir. 2007).

The Attorney General argues that the "MDA essentially seeks an advisory opinion on whether one prong of section 148B's three-prong test is preempted."  There is no dispute that in order to classify its couriers as independent contractors, the MDA must satisfy all three prongs of the Massachusetts statute.  The MDA has made no showing, however, as relates to Prong A or Prong C.  Even if we hold Prong B preempted, according to the Attorney General, the couriers may still be classified as employees.

The divide between a valid declaratory judgment and an invalid advisory opinion can be narrow.  See MedImmune, Inc. v.

Genentech, Inc., 549 U.S. 118, 127 (2007). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).

The MDA's complaint alleges that "[b]ecause many MDA members engage independent contractor delivery drivers or contract with entities that engage independent contractor delivery drivers, they arguably violate the Statute and this places them in peril of an enforcement action and civil actions by private parties." This peril is not remote or speculative as evidenced by the three MDA members who were defendants in state civil suits brought by private parties for misclassification under Section 148B. See MDA I, 671 F.3d at 39.

A decision on Prong B would lift a bar to couriers' classification as independent contractors even if it does not conclusively resolve their classification. In Weaver's Cove Energy, LLC v. Rhode Island Coastal Resources Management Council, 589 F.3d 458 (1st Cir. 2009), we held that a plaintiff could challenge two regulatory barriers in the process of obtaining authorization for a Liquified Natural Gas terminal, even if more remained. See id. at 467-69. Resolution of these two requirements

would be neither "advisory" nor "irrelevant," we held, since they "would cease to be barriers to ultimate approval of the project." Id. at 469.  Likewise, review of Prong B is not advisory since it stands as a barrier to individual couriers' classification as independent contractors.

### III.  Preemption

The MDA challenges the district court's formulation of the preemption test under the FAAAA and its application to Section 148B.  Since federal preemption is a question of statutory construction, we review these issues de novo.  DiFiore v. Am. Airlines, Inc., 646 F.3d 81, 85 (1st Cir. 2011).

"Congressional intent is the principal resource to be used in defining the scope and extent of an express preemption clause."  Brown v. United Airlines, Inc., 720 F.3d 60, 63 (1st Cir. 2013).  We must "focus first on the statutory language, 'which necessarily contains the best evidence of Congress' pre-emptive intent.'"  Dan's City Used Cars, Inc. v. Pelkey, 133 S. Ct. 1769, 1778 (2013) (quoting CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993)).  We may also consider the clause's purpose, history, and the surrounding statutory scheme.  Brown, 720 F.3d at 63.

The FAAAA states: "[A] State . . . may not enact or enforce a law . . . related to a price, route, or service of any motor carrier . . . with respect to the transportation of property."  49 U.S.C. § 14501(c)(1) (emphasis added). The first

phrase, "related to a price, route, or service," is borrowed from the earlier Airline Deregulation Act ("ADA") and interpreted identically. See Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 370 (2008). The second phrase, "with respect to the transportation of property," is unique to the FAAAA. See Dan's City, 133 S. Ct. at 1778.

We hold that the district court incorrectly applied the first clause, and incorrectly interpreted the second clause. It read the first clause too narrowly, and the second clause too broadly. We consider each in turn.

A. Related to a Price, Route, or Service

1. Broad Standard

To trigger preemption under the FAAAA, a state law must "relate[] to a price, route, or service" of a motor carrier. 49 U.S.C. § 14501(c)(1). "The phrase 'related to' . . . embraces state laws 'having a connection with or reference to' carrier 'rates, routes, or services,' whether directly or indirectly." Dan's City, 133 S. Ct. at 1778 (quoting Rowe, 552 U.S. at 370)(internal quotation marks omitted). Under this rubric, a state statute is preempted if it expressly references, or has a significant impact on, carriers' prices, routes, or services. See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 388 (1992).

The "related to" test is purposefully expansive. In Morales, the Court first explained that a statute relates to

prices, routes, or services if it "ha[s] a connection with or reference to" the same. 504 U.S. at 384. The Court held that guidelines governing airlines triggered preemption under the ADA because they expressly referenced fares, but also because they had a "forbidden significant effect upon fares." Id. at 388.

Congress used the same language as found in the ADA when writing the FAAAA and intended to incorporate the Morales Court's "broad preemption interpretation." Rowe, 552 U.S. at 370 (quoting H.R. Conf. Rep. 103-677, at 83 (1994), reprinted in 1994 U.S.C.C.A.N. 1715, 1755). As such, the Court has applied the same sweeping test to the "related to" language in the FAAAA. Id. at 370-71. In Rowe, the Court held that a Maine law regulating the delivery of tobacco to customers within the state was preempted under the FAAAA, in part, because it had a "'significant' and adverse 'impact' in respect to the federal Act's ability to achieve its pre-emption-related objectives." Id. at 371-72.

Recently, the Supreme Court highlighted the breadth of the test when it held that a common law claim for breach of an implied covenant "relates to" airlines' prices, routes, or services. Northwest, Inc. v. Ginsberg, 134 S. Ct. 1422, 1430-31 (2014). The Court's analysis focused not on the claim in the abstract, but on the underlying facts. See id. The Court found that the claim "clearly has such a connection" since it sought respondent's reinstatement in Northwest's frequent flyer program.

Id. at 1430.  "[T]he Northwest program is connected to the airline's 'rates' because the program awards mileage credits that can be redeemed for tickets and upgrades."  Id. at 1431.  "The program is also connected to 'services,' i.e., access to flights and to higher service categories."  Id.

There is, however, a necessary limit to the scope of FAAAA preemption.  We have previously noted that "countless state laws have some relation to the operations of airlines and thus some potential effect on the prices charged or services provided."  DiFiore, 646 F.3d at 86.  State laws whose effect is only "tenuous, remote, or peripheral" are not preempted.  See Rowe, 552 U.S. at 371 (quoting Morales, 504 U.S. at 390).  In Morales, the Court thus dismissed concerns that the ADA would preempt state laws against gambling or prostitution.  504 U.S. at 390.  In Rowe, the Court suggested that a "state regulation that broadly prohibits certain forms of conduct and affects, say, truckdrivers, only in their capacity as members of the public (e.g., a prohibition on smoking in certain public places)" would not be preempted.  552 U.S. at 375.

The Attorney General argues for a categorical rule against preemption of "background" labor laws, drawing on certain cases.  The Attorney General proffers "a sensible rubric" to confine FAAAA preemption: "background state statutes are not preempted if they are generally applicable and not directed to a

particular area of federal authority."  Thus, "general State employment statutes and other State background laws [are] per se 'tenuous' and 'remote.'"  According to the Attorney General, "Section 148B's definition of 'employee' is the quintessential 'background law' that applies to every industry in the Commonwealth and that arises in an area -- general employment law -- that is separate and distinct from the regulation of inter-firm competition that concerned Congress in the FAAAA."

Some courts have indeed used the language of "background" laws as a shorthand for laws that are found to be too tenuous, remote, or peripheral to carriers' prices, routes, or services to satisfy the "related to" test.  While we have never used that language and do not find such language particularly helpful, we describe the cases.

In Dilts v. Penske Logistics, LLC, No. 12-55705, 2014 WL 4401243 (9th Cir. Sept. 8, 2014), for example, the Ninth Circuit found that "generally applicable background regulations that are several steps removed from prices, routes, or services, such as prevailing wage laws or safety regulations, are not preempted." Id. at *7.  These laws may have some effect on prices, routes, or services, but that effect is insufficient to trigger federal preemption.  See id.  The Ninth Circuit determined that California's meal and rest break laws were "broad laws applying to hundreds of different industries with no other forbidden connection

-14-

with prices, routes, and services."  Id. (alterations omitted) (internal quotation marks omitted).  The Ninth Circuit concluded that "[t]he FAAAA does not preempt California's meal and rest break laws as applied to Defendants, because those state laws are not 'related to' Defendants' prices, routes, or services." Id. at *10.

The Attorney General also relies on S.C. Johnson & Son, Inc. v. Transport Corp. of America,  Inc., 697 F.3d 544 (7th Cir. 2012).[2]  There, the Seventh Circuit considered the plaintiffs' claims for fraudulent misrepresentation by omission, conspiracy to commit fraud, criminal conspiracy to violate Wisconsin's bribery statute, and Wisconsin's state equivalent of the federal racketeering statute.  Id. at 557-58.  The Seventh Circuit held that the first two claims were preempted, as a matter of law, since they "relate sufficiently to rates, routes, or services." Id. at 557.  The latter two claims were not preempted since they were too tenuously related to the regulation of the prices, routes, and

---

[2]  A district court in the Northern District of Illinois recently cited S.C. Johnson & Son, Inc. v. Transport Corporation of America, Inc. when holding that a state labor law, which included the definition of an independent contractor, was not preempted under the FAAAA.  Costello v. BeavEx Inc., No. 12 C 7843, 2014 WL 1289612, at **3, 5-7 (N.D. Ill. Mar. 31, 2014). The court found that the Illinois Wage Payment and Collection Act ("IWPCA") "fits the mold of a 'background law.'"  Id. at *6.  "The law applies to all employers and employees in Illinois and lays out guidelines for, among other things, pay periods, deductions from wages, and avenues to pursue in the event of employment disputes." Id.  Like all economic regulation, the IWPCA may "play[] a role in setting the market price," but "[t]his is not sufficient to support preemption."  Id. (citing S.C. Johnson, 697 F.3d at 558).

-15-

services of the trucking industry.  Id. at 558-60.  The Seventh Circuit characterized them as "state laws of general application that provide the backdrop for private ordering."  Id. at 558. Phrased another way, they were "background laws" that affected the costs of inputs to market transactions, such as labor, capital, or technology.  Id.  "[L]aws that regulate these inputs operate one or more steps away from the moment at which the firm offers its customer a service for a particular price."  Id.

The Attorney General's proposed construct, however, runs counter to Supreme Court precedent broadly interpreting the "related to" language in FAAAA.  In the first articulation of the test, the Morales Court dismissed the idea that a state statute must regulate or specifically address the airline industry in order to be preempted.  504 U.S. at 385-86.  "Besides creating an utterly irrational loophole (there is little reason why state impairment of the federal scheme should be deemed acceptable so long as it is effected by the particularized application of a general statute), this notion similarly ignores the sweep of the 'relating to' language."  Id. at 386.  The error of the Attorney General's test is perhaps best highlighted by the Court's recent decision concerning a state law claim for breach of an implied covenant of good faith and fair dealing.  See Northwest, 134 S. Ct. at 1430-31. This generally applicable state common law claim would fail the

-16-

Attorney General's "sensible rubric," and yet, the Court found that it "clearly" satisfied the "related to" test, id. at 1430.

In addition, the Attorney General's construct is not supported by the jurisprudence in this circuit. In DiFiore, we recognized that some cases would fall beyond the scope of FAAAA preemption, but never suggested a categorical rule. See 646 F.3d at 87. More recently, in Bower v. Egyptair Airlines Co., 731 F.3d 85 (1st Cir. 2013), we held that the plaintiff's common law tort claims of interference with custodial relations, negligence, negligent infliction of emotional distress, and loss of filial consortium were preempted by the ADA since they related sufficiently to the service of an air carrier. Id. at 93, 98. We noted that a "state law may be preempted even if it is indirectly or generally applicable." Id. at 95.

Finally, the Attorney General's construct is contradicted by the very cases on which she relies. The Seventh Circuit disclaimed any notion of "a simple all-or-nothing question." See S.C. Johnson, 697 F.3d at 550. "[I]nstead, the court must decide whether the state law at issue falls on the affirmative or negative side of the preemption line." Id. A careful analysis of two of the claims at issue showed the label of "background" to be warranted given their tenuous effect on prices, routes, and services. See id. at 558-60. The Seventh Circuit found two other claims, for fraudulent misrepresentation by omission and conspiracy

-17-

to commit fraud, sufficiently related to rates, routes, or services to trigger preemption, despite their general applicability. Id. at 557.

Further, in Dilts, the Ninth Circuit recognized that generally applicable statutes, "broad laws applying to hundreds of different industries," could be preempted if they have a "forbidden connection with prices, routes, and services." See 2014 WL 4401243, at *7 (alterations omitted). "[T]hat is," the Ninth Circuit specified, "those that do not directly or indirectly mandate, prohibit, or otherwise regulate certain prices, routes, or services [] are not preempted by the FAAAA." Id.

We refuse the Attorney General's invitation to adopt such a categorical rule exempting from preemption all generally applicable state labor laws. As evidenced by Northwest, we must carefully evaluate even generally applicable state laws for an impermissible effect on carriers' prices, routes, and services. The court must engage with the real and logical effects of the state statute, rather than simply assigning it a label.

2. Application of the FAAAA to Section 148B

The MDA argues that Section 148B's effective ban on the use of independent contractors renders it preempted under either a facial or an as-applied challenge. The MDA argues that the FAAAA preempts Section 148B on its face due to its logical effect on the same-day delivery industry as a whole. Since individual couriers

necessarily act within the usual course of the business of their employers, they must be deemed employees.  As such, Section 148B "effectively prohibits motor carriers from engaging their couriers as independent contractors."

The MDA's amicus curiae,[3] the Chamber of Commerce, argues that "[a] state law specifying who must provide the service -- an employee of the carrier -- is no different from regulating the service itself."  The Attorney General contests the MDA's characterization of the law as one that bans the use of individual independent contractors.[4]

The MDA also argues that the FAAAA preempts Section 148B due to its impermissible effect on the prices, routes, and services of Xpressman.  Preemption is implicated if the statute has a forbidden significant effect on even one motor carrier.  See N.H. Motor Transp. Ass'n v. Rowe, 448 F.3d 66, 72-73 (1st Cir. 2006), aff'd on other grounds sub nom. Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364 (2008).  According to Xpressman, the re-classification

---

[3]  We express our appreciation to the several amici for their assistance.

[4]  At oral argument, the Attorney General argued that Section 148B did not operate as a bar to the classification of individual couriers as independent contractors so long as the delivery company arranged deliveries, and the courier performed the deliveries. This parses the issue too finely.  On the facts presently reflected in the record, the couriers deliver packages for delivery companies.  There can be no dispute that they act in the course of business for the delivery companies, even if one performs the deliveries and the other arranges the deliveries.

of its 58 independent couriers as employees would change the routes offered to customers, would preclude on-demand delivery services, and would drastically increase Xpressman's costs and thus its prices. The Attorney General argues that the MDA "misstates or overstates" this effect.

The district court held that Section 148B's "connection to prices, routes and services is insufficient for the FAAAA . . . to preempt it." The district court characterized Section 148B as a generally applicable wage law, and noted, "[t]hat a regulation on wages has the potential to impact costs and therefore prices is insufficient to implicate preemption." The district court worried that "to find the 'FAAAA preempts wage laws because they may have an indirect impact on [a motor carrier]'s pricing decisions amounts to an invitation to immunize it from all state economic regulation.'"

In so holding, the district court made several critical errors. First, a statute's "potential" impact on carriers' prices, routes, and services can be sufficient if it is significant, rather than tenuous, remote, or peripheral. We have previously rejected the contention that empirical evidence is necessary to warrant FAAAA preemption, and allowed courts to "look[] to the logical effect that a particular scheme has on the delivery of services or the setting of rates." Rowe, 448 F.3d at 82 n.14. Second, this logical effect can be sufficient even if indirect, as described

-20-

above.  Far from immunizing motor carriers from all state economic regulations, we are following Congress's directive to immunize motor carriers from state regulations that threaten to unravel Congress's purposeful deregulation in this area.  Finally, the district court failed to consider the impact of the statute on carriers' routes and services, and not merely their prices.

"Ultimately," the district court held, "the Statute's effect on Xpressman's labor costs is immaterial."  "Even if the impact was 'significant,' . . . this would not change the fact that the Statute does not relate to the 'movement of property.'"  In essence, the district court found that its holding that Section 148B did not meet the second requirement, "with respect to the transportation of property," obviated the need to investigate its potential success on the first requirement.  Since we conclude that the district court erred in its interpretation of the second section of the FAAAA, a determination on the first requirement is now necessary.

We express no view on the sufficiency of the evidence before the district court.  In opposition to the MDA's motion for summary judgment, the Attorney General had argued that it needed to conduct additional discovery in order to develop facts necessary to its opposition. See Fed. R. Civ. P. 56(d).  The district court did not reach the Rule 56(d) motion.  The district court ought to decide this matter in the first instance and determine whether the

Attorney General has met her burden of establishing the need for additional discovery under Rule 56(d).

B.   With Respect to the Transportation of Property

The FAAAA preempts state laws "related to a price, route, or service of any motor carrier . . . with respect to the transportation of property."  49 U.S.C. § 14501(c)(1) (emphasis added).   The district court interpreted the second phrase as imposing an independent, and severe, requirement for FAAAA preemption.  The district court explained that, "[u]nlike the ADA, FAAAA preemption applies only [] to state statutes regulating the 'transportation of property.'"   Since Section 148B "has a broad application to a swath of state wage and hour laws, which, in turn, apply to all employees regardless of the underlying industry," the district court determined that Section 148B failed to relate sufficiently to the transportation of property.

In reaching this conclusion, the district court relied heavily on the Supreme Court's recent decision in Dan's City, 133 S. Ct. 1769.  There, the Court considered state law claims based on a New Hampshire statute that regulated the removal, storage, and disposal of abandoned motor vehicles after they had been towed, id. at 1776, and concluded that the state law claims were not preempted under the FAAAA, id. at 1775.  The Court noted that the phrase, "with respect to the transportation of property," in the FAAAA was a "conspicuous" addition to the ADA preemption provision.  Id. at

-22-

1778. The Court stated that the second phrase "'massively limits the scope of preemption' ordered by the FAAAA." Id. "[F]or purposes of FAAAA preemption, it is not sufficient that a state law relates to the 'price, route, or service' of a motor carrier in any capacity; the law must also concern a motor carrier's 'transportation of property.'" Id. at 1778-79.

The district court's rule misreads the import of Dan's City. While Dan's City stated only that the law must "concern" a motor carrier's transportation of property, the district court required the law to "regulate" the motor carrier's transportation of property. Such a strict reading of the second phrase would effectively nullify the expansive reading of the first phrase. A general statute, whose effect was indirect but significant, would no longer be preempted. Although the Court expressed its understanding that the second phrase "limits" the scope of FAAAA preemption, it gave no indication that the second phrase in fact overrules all earlier precedent on the first phrase. Without a clear statement from the Court, we cannot assume that its opinion intended to do so.

Instead, we understand Dan's City to ensure that FAAAA preemption does not apply when a state statute concerns motor carriers in matters unrelated to the transportation of property. In Dan's City, the Court acknowledged that a tow truck qualifies as a motor carrier, but stressed that the statute did not affect the

-23-

operation of tow trucks.  133 S. Ct. at 1776 n.1, 1779.  Instead, the statute regulated the disposal of vehicles after their transportation by towing had ended.  Id. at 1779.  The Court stated "it is not sufficient that a state law relates to the 'price, route, or service' of a motor carrier in any capacity; the law must also concern a motor carrier's 'transportation of property.'"  Id. at 1778-79 (emphasis added).

This interpretation of the second phrase limits the scope of FAAAA preemption, as noted by the Court in Dan's City.  The second phrase excludes from FAAAA preemption any state law that affects a motor carrier's prices, routes, or services outside the context of the transportation of property.  The scope of FAAAA preemption would be far broader if it encompassed state statutes that affected motor carriers in any capacity.  Instead, the FAAAA is carefully tailored to preempt only those statutes that affect a motor carrier's transportation of property.  This excludes, for example, statutes that affect a motor carrier's transportation of passengers, statutes that affect a motor carrier's transportation of garbage, or, like in Dan's City, statutes that relate to motor carriers after the transportation of property has ended.

The facts of this case are a far cry from Dan's City.  Section 148B governs the classification of the couriers for delivery services.  It potentially impacts the services the delivery company provides, the prices charged for the delivery of

property, and the routes taken during this delivery.  The law clearly concerns a motor carrier's "transportation of property." The district court must address on remand whether this effect on delivery companies' prices, routes, and services rises to the requisite level for FAAAA preemption.

## IV.  Conclusion

The FAAAA preempts state laws that "relate to" the prices, routes, or services of a motor carrier "with respect to the transportation of property."  We reverse and remand to the district court to determine, consistent with the principles elucidated in this opinion, whether Section 148B satisfies the broad preemption test based on a review of the full record.

So ordered.