**Supreme Court**

Robin Brindle et al.        :        No. 2016-324-M.P.
                                          (PC 12-3075)

v.        :        No. 2016-325-M.P.
                                          (PC 12-3076)

Rhode Island Department of Labor and        :        No. 2016-326-M.P.
Training, by and through its Director, et al.                  (PC 12-3073)
                                          No. 2016-328-M.P.
                                          (PC 12-3072)
                                          No. 2016-329-M.P.
                                          (PC 12-3071)

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at (401) 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | | |
|---|---|---|
| Robin Brindle et al. | : | No. 2016-324-M.P. |
| | | (PC 12-3075) |
| v. | : | No. 2016-325-M.P. |
| | | (PC 12-3076) |
| Rhode Island Department of Labor and | : | No. 2016-326-M.P. |
| Training, by and through its Director, et al. | | (PC 12-3073) |
| | | No. 2016-328-M.P. |
| | | (PC 12-3072) |
| | | No. 2016-329-M.P. |
| | | (PC 12-3071) |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.** These consolidated cases came before the Supreme Court on November 27, 2018. The petitioners, Robin Brindle, Kathleen Brown, Sandra Carter, Marcie LaPorte, and Kelvin Ramirez (a/k/a Kevin Ramirez) (collectively petitioners), filed petitions for writ of certiorari to this Court pursuant to the Administrative Procedures Act, G.L. 1956 § 42-35-16, seeking review of a Superior Court judgment affirming a decision of the Rhode Island Department of Labor and Training (the DLT) that denied the petitioners' wage and hour claims against Delta Airlines, Inc. (Delta). Before this Court, the petitioners argue that the Superior Court erred in affirming the DLT's finding that G.L. 1956 § 25-3-3 is preempted by federal law, specifically, 49 U.S.C § 41713(b)(1) of the Airline Deregulation Act (ADA). For the reasons set forth herein, we affirm the judgment of the Superior Court.

**Facts and Travel**

Between September 6, 2011, and September 13, 2011, petitioners, who were customer service agents for Delta at its facility at the T.F. Green Airport in Warwick, Rhode Island, filed five separate individual "nonpayment of wages" complaints with DLT. Each complaint alleged

- 1 -

that Delta violated the provisions of § 25-3-3 by failing to pay petitioners time-and-a-half for hours worked on Sundays and holidays. Delta filed a response with DLT on November 16, 2011, arguing that the complaints should be dismissed because § 25-3-3, which mandates the payment of time-and-a-half for work performed on Sundays and holidays, is preempted by the ADA. Section 25-3-3(a) provides, in part, that:

> "Work performed by employees on Sundays and holidays must be paid for at least one and one-half (1 1/2) times the normal rate of pay for the work performed; provided: (1) that it is not grounds for discharge or other penalty upon any employee for refusing to work upon any Sunday or holiday enumerated in this chapter[.]"

The petitioners' complaints and Delta's letter were addressed at a hearing before a DLT hearing officer on May 8, 2012. At the hearing, the hearing officer did not take testimony or receive other evidence. Instead, the hearing officer indicated that she was "inclined to agree with" Delta that § 25-3-3 is preempted by the ADA; but she allowed petitioners to raise any arguments that their wage complaints were not preempted. The petitioners elected not to raise any argument before the hearing officer on the issue of preemption. In a written decision,[1] the hearing officer concluded that the DLT was "preempted from enforcing wage laws for airline employees" because requiring Delta to pay petitioners time-and-a-half for hours worked on Sundays and holidays relates to Delta's prices, routes, or services, which, in turn, triggers preemption in accordance with the ADA. The hearing officer declared that DLT has no authority to adjudicate the claims, and therefore dismissed all five complaints. The petitioners timely appealed to the Superior Court, in accordance with § 42-35-15.[2]

---

[1] Because petitioners filed separate individual complaints with the DLT, the DLT issued five separate decisions, indistinguishable in substance.

[2] The petitioners originally filed separate appeals with the Superior Court on June 15, 2012; however, because each case presented identical legal issues, petitioners' appeals were consolidated by the Superior Court on October 5, 2012.

On appeal before the Superior Court, petitioners argued that the hearing officer's decision to dismiss the complaints was affected by an error of law because the ADA does not preempt § 25-3-3. The Superior Court subsequently concluded that the hearing officer erred in dismissing petitioners' complaints because she failed to hear, review, or weigh evidence demonstrating that petitioners' wage complaints had a sufficient connection to Delta's prices, routes, or services to warrant preemption. In accordance with § 42-35-15, the Superior Court remanded the case to the DLT for a further hearing and a finding of fact on the issue of the effect of employee wages on Delta's prices, routes, and services.

The remand hearing was conducted by the DLT on May 4, 2015, before the same hearing officer. At that hearing, Kelly Fredericks, President and CEO of the Rhode Island Airport Corporation (RIAC), testified to his experience in the aviation and transportation industry, which spanned more than thirty years. Mr. Fredericks explained that a critical component of his job at RIAC was to attract and maintain air-carrier service at T.F. Green Airport, which services eight airline carriers and approximately 10,000 travelers per day. He testified that cost and demand, including labor costs, are factors that air carriers take into consideration when deciding whether to do business in Rhode Island. Mr. Fredericks agreed that higher labor costs in Rhode Island would make RIAC "less competitive in the market for air services" and therefore that a statute that requires Sunday and holiday premium pay could have a significant negative impact on air carriers conducting business in Rhode Island; could alter flights into and out of the airport; or could affect the number of employees scheduled for Sundays or holidays.

Sandra LaPlante, the station manager for Delta at T.F. Green Airport, testified next that she had worked for Delta for twenty years and that her duties include oversight of Delta's day-to-day operations, including managing and scheduling a team of twenty-five customer service

agents and ensuring that Delta's T.F. Green location is sufficiently staffed for operations. Ms. LaPlante testified that service on Sundays and holidays is important to Delta, as its T.F. Green Airport location operates seven days per week. She next explained that, if Delta were forced to pay Sunday premium time to its Rhode Island workers, it could affect the customer service that is provided at T.F. Green Airport and cause Delta to modify the services that it provides on those particular days because it could lead to a reduction of staff.

After considering the testimony and weighing the credibility of the witnesses, the hearing officer, for the second time, concluded that petitioners' wage claims were preempted by the ADA, and she dismissed the complaints. In a written decision, the hearing officer found that Ms. LaPlante's testimony was persuasive because of her twenty years with Delta, in various positions, including station manager charged with overseeing customer service. In reaching her conclusion, the hearing officer pointed to Ms. LaPlante's testimony that an increase in employees' wages would affect Delta's services. The hearing officer also found that, although not specific to Delta, the testimony of Mr. Fredericks about the factors that an air carrier considers when determining whether to locate or remain at a particular airport applied to air carriers such as Delta and was supported by the testimony of Ms. LaPlante. Therefore, because the testimony demonstrated "that increased pay on Sundays and holidays could impact staffing which would impact the level of service[,]" the hearing officer found that § 25-3-3's time-and-a-half requirement is preempted from application at T.F. Green Airport by the ADA.

The petitioners appealed the second decision to the Superior Court and argued that the hearing officer committed an error of law in finding that § 25-3-3 was preempted because the potential for an increase in labor costs posed by compliance with § 25-3-3 is, petitioners opined, insufficient to trigger preemption. The petitioners also argued that the decision of the hearing

officer is flawed because Delta failed to prove that increased labor costs would have a significant impact on prices, routes, or services. In turn, it was Delta's contention that § 25-3-3 is a "blue law" designed to regulate work and wages on Sundays and holidays. Delta argued that, if made applicable to airlines, § 25-3-3 would dictate how airline carriers can employ employees, which is sufficient to trigger preemption.[3] Delta also claimed that the decision of the hearing officer was supported by substantial evidence in the record to demonstrate that requiring Delta to comply with § 25-3-3 would significantly impact its prices, routes, and services.

In a written decision, the Superior Court affirmed the decision of the hearing officer. The Superior Court justice found that, as a matter of law, § 25-3-3 is preempted by the ADA because the statute attempts to regulate the work force on Sundays and holidays, which "affects the competitive market force of airlines." The Superior Court justice explained that requiring air carriers in Rhode Island to comply with § 25-3-3's premium pay provision would have a direct impact on the prices, routes, and services of Delta because it would influence their decision-making process regarding discretionary services, customer interaction, and staffing. In addition, the Superior Court justice concluded that the decision of the hearing officer was not clearly erroneous, but it was supported by adequate and legally competent evidence. Specifically, the Superior Court justice explained that the hearing officer accepted Mr. Fredericks and Ms. LaPlante's testimony concerning the effect that § 25-3-3 would have on Delta's prices, routes, and services as credible, and she favorably noted their demeanor and forthright answers. The Superior Court thus concluded that the decision of the hearing officer was "neither affected by error of law nor clearly erroneous."

---

[3] Although not raised by the parties, we note that G.L. 1956 § 25-3-3 allows an employee to refuse "to work upon any Sunday or holiday[.]"

**Standard of Review**

On certiorari, this Court does not weigh the evidence; instead, "we limit the scope of our review to the record as a whole to determine whether any legally competent evidence exists therein to support the trial court's decision or whether the trial court committed error of law in reaching its decision." *Rhode Island Temps, Inc. v. Department of Labor and Training, Board of Review*, 749 A.2d 1121, 1124 (R.I. 2000). Legally competent evidence is defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." *Id.* at 1125 (quoting *Center for Behavioral Health, Rhode Island, Inc. v. Barros*, 710 A.2d 680, 684 (R.I. 1998)). This Court engages in a *de novo* review of determinations of law made in the course of an administrative proceeding. *See Johnston Ambulatory Surgical Associates, Ltd. v. Nolan*, 755 A.2d 799, 805 (R.I. 2000). We will reverse a decision of the Superior Court in this context only if we find that the decision has "no reliable, probative, [or] substantial evidence" to support it. *State v. Rhode Island State Labor Relations Board*, 694 A.2d 24, 28 (R.I. 1997) (quoting *Barrington School Committee v. Rhode Island State Labor Relations Board*, 608 A.2d 1126, 1138 (R.I. 1992)).

**Discussion**

The sole issue before the Court is whether the Superior Court erred in affirming DLT's finding that § 25-3-3 is preempted by 49 U.S.C. § 41713(b)(1) of the ADA. Specifically, we are tasked with considering whether the Superior Court justice committed an error of law in upholding the decision of the DLT that compliance with the requirements of § 25-3-3 will significantly impact the prices, routes, and services of airline carriers and, thus, is preempted by the ADA. We perceive no error.

The ADA was enacted in 1978 to promote "efficiency, innovation, and low prices" in the air transportation industry through "maximum reliance on competitive market forces and on actual and potential competition[.]" 49 U.S.C. §§ 40101(a)(6), 12(A); *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 280 (2014). By enacting the ADA, Congress largely deregulated domestic air transportation. *See American Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995). "To ensure that the States would not undo federal deregulation with regulation of their own," Congress included a preemption clause as part of the ADA. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992). Under the preemption clause, the party claiming that preemption applies must establish that "a State, political subdivision of a State, or political authority of at least [two] States * * * enact[ed] or [is] enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier[.]" *See* 49 U.S.C. § 41713(b)(1). A law "relates to" a price, route, or service of an air carrier if it has "a connection with, or reference to" an air carrier's prices, routes, or services. *Morales*, 504 U.S. at 384. Thus, where a state law has "the forbidden significant effect" on the prices, routes, or services of an air carrier, the ADA preempts that law. *See id.* at 388; *see also United Parcel Service, Inc. v. Flores-Galarza*, 318 F.3d 323, 335 (1st Cir. 2003).

It is clear that federal preemption of state law is a matter of federal constitutional law. The Supremacy Clause, in Article VI of the United States Constitution, directs that federal law "shall be the supreme law of the land; and the judges in every state shall be bound thereby * * *." U.S. Const. Art. VI, cl. 2. Under the Supremacy Clause, if Congress so intends, state laws may be preempted by federal law and will be considered to be "without effect." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). The intention to preempt state law may arise explicitly from the language

employed in the statute or implicitly from the statute's structure and purpose. *Morales*, 504 U.S. at 383. In the case at bar, Delta relies upon the express language of the ADA in asserting that petitioners' state law claims are preempted.

The United States Supreme Court has offered important guidance as to how the ADA's preemption clause is to be interpreted. Notably, the Supreme Court has recognized that the term "related to" in the phrase "related to a price, route, or service" expresses "a broad pre-emptive purpose." *See Ginsberg*, 572 U.S. at 281 (noting that the phrase "other provision having the force and effect of law" is much more broadly worded than other legislation that expressly applies only to a law or regulation; therefore, ADA preemption includes suits at common law); *see also Wolens*, 513 U.S. at 225; *Morales*, 504 U.S. at 383, 384. For example, in *Morales*, the United States Supreme Court held that the ADA expressly preempted the application of state deceptive business practice statutes to airline fare advertisements because such regulation related to the content and format of air carrier fare advertising and had a "significant impact upon the airlines' ability to market their product, and hence a significant impact upon the fares they charge." *Morales*, 504 U.S. at 390. The Court explained that the ADA's broad preemption clause meant state laws and regulations "having a connection with or reference to airline 'rates, routes, or services,' are pre-empted" by the ADA. *Id.* at 384. Thus, even an indirect effect by a state law of general applicability is sufficient to meet the "related to" language in the preemption clause. *Id.* at 386-87. On the other hand, the Supreme Court has recognized that, in some cases in which the preemption bar is raised, the challenged enactment may have "'too tenuous, remote, or peripheral a manner' to have pre-emptive effect." *Id.* at 390 (quoting *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 100 n.21 (1983)).

Next, in *Wolens*, the Supreme Court reaffirmed the breadth of the ADA's preemption clause; in that case, the plaintiffs were participants in American Airlines' frequent-flyer program who claimed to be injured by modifications to the program and brought suit claiming breach of contract and violation of the Illinois Consumer Fraud Act. *Wolens*, 513 U.S. at 224-25. The Supreme Court held that claims under the Illinois Consumer Fraud Act were preempted by the ADA, but that the breach-of-contract claims were not. *Id.* at 226. The Supreme Court explained that the frequent-flyer program in question related to the air carrier's rates because the airline gave mileage credits for free tickets, upgrades, and services, and because the program provided access to flights and service class upgrades regardless of capacity controls and blackout dates. *Id.* In contrast, the breach-of-contract claims were not preempted because they did not allege a violation of a state-imposed obligation, but rather alleged a violation of a self-imposed (contractual) obligation. *Id.* at 229. The Supreme Court stressed that the purpose of the ADA was to promote market efficiency and that the ability to enforce private contracts through a breach-of-contract action was fundamental to a stable and efficient market. *Id.* at 230.

Most recently, in *Ginsberg*, the Supreme Court held that an airline customer's claim for breach of the implied covenant of good faith and fair dealing was preempted by the ADA. *Ginsberg*, 572 U.S. at 288. The airline had terminated the customer's membership in the airline's frequent flyer program based on alleged abuse of the program. *Id.* at 277. The customer sued, alleging, among other things, that the termination of his membership violated the implied covenant of good faith and fair dealing. *Id.* at 278. The Supreme Court explained that even state common-law rules such as the implied covenant of good faith and fair dealing are preempted by the broad sweep of the ADA such that an exemption for common-law claims would be contrary to the ADA's central purpose. *Id.* at 281-82. The Supreme Court went on to explain that what

was important was the effect of the challenged provision on prices, routes, or services, because state common-law rules can undermine the purpose of the ADA as much as a statute or regulation can. *Id.* at 282, 283. The Supreme Court further explained that the claim in question was clearly related to "rates, routes, or services" because the plaintiff sought reinstatement in the airline's frequent-flyer program so that he could accrue mileage credits that could be redeemed for tickets and upgrades. *Id.* at 284-85.

Accordingly, federal preemption under the ADA extends to claims related to state consumer-protection statutes, frequent-flyer programs, common-law implied covenants, and advertising guidelines, because of a connection to the core "services" that an airline provides. With these principles in mind, we turn to the merits of whether petitioners' claims are preempted by the ADA.

As a preliminary matter, the fact that § 25-3-3 may impose costs on airlines and therefore adversely affect fares is inconsequential. As the First Circuit noted, were preemption to apply to a state law solely in that circumstance, preemption "would effectively exempt airlines from state taxes, state lawsuits of many kinds, and perhaps most other state regulation of any consequence." *DiFiore v. American Airlines, Inc.*, 646 F.3d 81, 89 (1st Cir. 2011). Because "countless state laws have *some* relation to the operations of airlines and thus *some* potential effect on the prices charged or services provided[,]" we recognize that there is a limit to the ADA's preemptive scope. *Id.* at 86 (emphasis in original). Nevertheless, on certiorari, petitioners argue that Delta failed to satisfy its burden of proof of demonstrating that compliance with § 25-3-3 would have a "significant impact" on its prices, routes, and services because, petitioners contend, the record is devoid of any facts upon which one could reasonably conclude that an increase in labor costs alone would have any impact on rates, routes, and services, "much less a significant impact."

- 10 -

Contrary to petitioners' contention, however, Delta has demonstrated that compliance with § 25-3-3 goes far beyond a mere increase in labor costs.

The First Circuit has emphasized that evidence of "a statute's 'potential' impact on carriers' prices, routes, and services can be sufficient if it is significant, rather than tenuous, remote, or peripheral." *Massachusetts Delivery Association v. Coakley*, 769 F.3d 11, 21 (1st Cir. 2014); *see Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 647 (9th Cir. 2014) (stating that even a statute's potential impact on carrier's prices, routes, and services can be sufficient). Empirical evidence in this regard is not necessary, and courts may "look to the logical effect that a particular scheme has on the delivery of services or the setting of rates." *Coakley*, 769 F.3d at 21 (brackets omitted) (quoting *New Hampshire Motor Transport Association v. Rowe*, 448 F.3d 66, 82 n.14 (1st Cir. 2006)). Such "logical effect can be sufficient even if indirect." *Id.*

The petitioners take issue with the fact that Delta's evidence at the remand hearing was limited to two witnesses who failed to provide "a single fact upon which it could base a prediction of such baleful effects." Specifically, petitioners assert that Delta failed to satisfy its burden of demonstrating how compliance with § 25-3-3 would affect labor costs and how compliance with § 25-3-3 would be so onerous as to drive airlines away from Rhode Island, because Delta's witnesses were not experts, their opinions were speculative, and their conclusions were unsupported by facts or quantifiable evidence. However, we are hard-pressed to agree because, as elucidated above, conclusive evidence of the potential impact is not required to trigger preemption. The First Circuit in *Coakley* did not announce a categorical rule that an airline always needs to provide analytical data on the effect of a petitioner's claim on its prices or services in order to demonstrate preemption under the ADA. Rather, in deciding the preemption question, the First Circuit explicitly "allowed courts to 'look to the logical effect that a particular

scheme has on the delivery of services or the setting of rates.'" *Coakley*, 769 F.3d at 21 (brackets omitted) (quoting *Rowe*, 448 F.3d at 82 n.14).

During the remand hearing before the hearing officer, Delta offered the sworn testimony of Ms. LaPlante, the station manager for Delta at T.F. Green Airport, and Mr. Fredericks, President and CEO of RIAC. They testified that forcing Delta, and other airlines, to comply with the requirements of § 25-3-3 could impact the services that Delta and other airlines provide on Sundays and holidays.[4] Mr. Fredericks testified that, in his experience, forcing compliance with § 25-3-3's time-and-a-half pay would have a direct impact on an airline's decision-making process concerning discretionary services, customer interaction, and staffing. He testified that Sundays and holidays are some of the most important days to RIAC and stated that increased labor costs "could lead to reduction in service from a flight frequency opportunity[.]" In addition, Ms. LaPlante testified that one of her main duties is to ensure that Delta provides superior customer service, and that forcing Delta to pay premium pay to its Rhode Island employees could impact or modify staffing and services; this, according to Ms. LaPlante, would likely cause airlines like Delta to reduce staff on Sundays and holidays and would make Delta less competitive in the Rhode Island market. With this testimony in hand, the conclusion that requiring airlines such as Delta to provide one-and-one-half-times the normal rate of pay for work on Sundays and holidays does in fact "relate to" the services provided by Delta. Thus, the "logical effect" of § 25-3-3 on Delta's delivery of services is sufficient to bring it within the preemptive scope of the ADA.

---

[4] As relevant here, "service" includes "steps that occur before * * * the airplane is actually taxiing or in flight." *DiFiore v. American Airlines, Inc.*, 646 F.3d 81, 87-88 (1st Cir. 2011).

- 12 -

Accordingly, we are satisfied that there was sufficient evidence in the record for the Superior Court to conclude that DLT's decision was supported by adequate and legally competent evidence.

## Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court. The record may be remanded to the Superior Court with our decision endorsed thereon.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Robin Brindle et al. v. Rhode Island Department of Labor and Training, by and though its Director, et al. |
| **Case Number** | No. 2016-324-M.P. (PC 12-3075) <br> No. 2016-325-M.P. (PC 12-3076) <br> No. 2016-326-M.P. (PC 12-3073) <br> No. 2016-328-M.P. (PC 12-3072) <br> No. 2016-329-M.P. (PC 12-3071) |
| **Date Opinion Filed** | June 18, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Susan E. McGuirl |
| **Attorney(s) on Appeal** | For Petitioners: <br><br> Vicki J. Bejma, Esq. |
| | For Respondents: <br><br> Ira G. Rosenstein, Pro Hac Vice <br> William E. O'Gara, Esq. <br> Matthew C. Reeber, Esq. <br> Sean Fontes, Esq. <br> Nicole M. Zito, Pro Hac Vice |