VLADIMIR NOVAKOVIC, Plaintiff-Appellant, v. GEORGE SAMUTIN *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—03—1382

Opinion filed November 12, 2004.—Rehearing denied January 12, 2005.

Jeffrey Grant Brown, of Jeffrey Grant Brown, P.C., and Jonathan Nachsin, of Jonathan Nachsin, P.C., both of Chicago, for appellant.

Victor F. Ciardelli and Marc R. Campagna, both of Chicago, for appellees.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Vladimir Novakovic filed suit against defendants George Samutin (Samutin) and Guaranteed Financial Mortgage Service, Inc. (Guaranteed), alleging violations of the Real Estate Settlement Procedures Act of 1974 (12 U.S.C. § 2607 (1994)) (RESPA), the Truth in Lending Act (15 U.S.C. § 1638 (1994)) (TILA), and the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2002)) (the Act), as well as a common law breach of fiduciary duty, for defendants' failure to disclose a payment to Samutin following the closing and disbursement of a home mortgage refinancing loan by Guaranteed to plaintiff. The trial court granted defendants' motion for summary judgment on all counts and denied plaintiff's motion for class certification. Plaintiff now appeals. For the reasons that follow, we reverse and remand.

Plaintiff filed his initial complaint on July 6, 2000, alleging that Samutin was a mortgage broker who arranged a mortgage refinance loan transaction between plaintiff and Guaranteed, which closed on July 15, 1999. The principal amount of the loan was $352,000 with an interest rate of 9.95%. None of the documents executed at the closing indicated any individual payment to Samutin.

Plaintiff alleged that Samutin subsequently received a payment in the form of a "yield spread premium"[1] for procuring the loan when Guaranteed sold the loan to another mortgage lender, Option One.

[1]According to a 2001 Department of Housing and Urban Development policy statement, a yield spread premium (YSP) is an indirect fee paid by a mortgage lender to a mortgage broker, that is based on a portion of the interest rate on the borrower's loan. Borrowers without cash on hand to pay settlement costs will often pay a higher interest rate over the life of the loan to cover those costs. The lender may then sell the debt to investors at a higher price and share the difference with the broker, in the form of a YSP. 66 Fed. Reg. 53052, 53054 (October 18, 2001) (to be codified at 24 C.F.R. pt. 3500) (HUD policy statement).

Plaintiff contended that this payment: (1) violated section 2607(a) of RESPA, which prohibits a person from receiving a fee or kickback in connection with settling a federal mortgage loan without disclosing the payment to the mortgagee (12 U.S.C. § 2607(a) (1994)); (2) violated section 2 of the Act, in that the payment was an undisclosed material fact that would have influenced plaintiff's decision to accept the loan (815 ILCS 505/2 (West 2002)); (3) represented a breach of Samutin's fiduciary duty to plaintiff to disclose the payment, which led to a higher interest rate being charged for the loan; and (4) violated section 1638(b) of TILA, which requires a lender to disclose to a borrower any payments to third parties (15 U.S.C. § 1638(b) (1994)). Plaintiff sought actual damages in excess of $50,000, an amount three times the payment to Samutin in compensatory damages, and fees and costs.

In their answers, defendants asserted that Samutin did not act as a broker in arranging for the loan to plaintiff, that Samutin was an employee of Guaranteed and was not an individually licensed broker, that Samutin did not receive payment in the form of a yield spread premium, and that the subsequent payment to Samutin after the sale of plaintiff's loan did not have to be disclosed under state and federal regulations.

During discovery, plaintiff filed a motion to certify a class action by similarly situated borrowers against defendants, alleging that the suit involved Guaranteed's policy and practice of paying yield spread premiums to mortgage brokers for procuring loans, without disclosing the payments to borrowers, and that the practice and policy were not unique to Guaranteed's dealings with plaintiff. Attached to the motion were Guaranteed payroll records displaying "yield spreed [sic]" payments to Samutin in regard to plaintiff's and other borrowers' loans. As to plaintiff, the sheets showed a payment of $2,460 in net fees to Samutin.

Defendants filed a motion for summary judgment, arguing that they were not liable under RESPA because Samutin was not a mortgage broker, as plaintiff alleged, but rather an employee who was compensated in the form of a commission for originating plaintiff's loan, and that the payment thus did not have to be disclosed, pursuant to section 2607(c) of RESPA. Defendants also contended that the payment to Samutin resulted from the sale of plaintiff's mortgage to Option One, which was a secondary market transaction and was exempt from RESPA disclosure requirements. Defendants further argued that the payment to Samutin was compensation for the net gain Guaranteed realized after it sold plaintiff's loan to Option One and was not a cost applied to plaintiff, and thus did not have to be disclosed pursuant to the Act. Defendants lastly argued that Samu-

tin's status as an employee of Guaranteed relieved him of any fiduciary duties to plaintiff and exempted Guaranteed from disclosure requirements under section 1638(b) of TILA.

Defendants based their assertions on the deposition testimony of Samutin and Victor Ciardelli III, president of Guaranteed. Samutin had testified that he was employed as a loan originator for Guaranteed, worked approximately 35 undetermined hours per week, and was paid on commission in the form of a percentage of the net fees generated from the sale of loans he had originated. Samutin had an employment agreement with Guaranteed, was issued an employee handbook, and received annual W-2 forms detailing his compensation. Samutin worked primarily out of a Coldwell Banker office and would meet with Ciardelli approximately once a week to discuss his work. Samutin's performance was not regularly evaluated and he was not entitled to paid holidays, vacation, or sick days. His compensation arrangement with Guaranteed and those of other loan officers were kept confidential.

Ciardelli testified that Guaranteed acted as a direct mortgage lender with regard to plaintiff's loan, not as a mortgage broker, and funded the loan with its line of credit through Indy Mac (Guaranteed maintained a $3 million warehouse line of credit with Indy Mac to fund direct mortgage loans and would sometimes function as a mortgage broker in securing funding through other lenders). After plaintiff's loan closed and the funds were disbursed, Guaranteed sold the debt to Option One and realized a gain of $3,520. After deducting costs and fees incurred in securing the loan, Guaranteed paid Samutin $2,640 as commission.

The employment contract between Samutin and Guaranteed described Samutin's duties as soliciting mortgage customers, processing loan applications, submitting loans for underwriting and approval by Guaranteed's investors, arranging and attending loan closings, and collecting funds due to Guaranteed as a result of each closed loan. Under the contract, Samutin was entitled to 60% of the fees generated for each loan he closed, minus processing fees and other expenses. Guaranteed reserved the right to reduce Samutin's compensation by $500 if Guaranteed did not realize at least that amount in fees from a given loan. Samutin would be compensated only 45% of fees on loans originated through the Coldwell Banker offices affiliated with Guaranteed. The contract provided for no other compensation or benefits. It further stated that Samutin could not perform similar services for other mortgage brokers and entitled Guaranteed to hold back $2,000 in payments due to Samutin to cover any outstanding expenses upon termination of the contract. The contract further

provided that Samutin would indemnify Guaranteed for any actions brought against it as the result of Samutin's activities.

Plaintiff responded that summary judgment would be improper because fact issues remained as to Samutin's status as an employee of Guaranteed or as an independent broker, and the issue could not be decided as a matter of law. Plaintiff cited provisions in Samutin's employment agreement indicating that Samutin had more control over his work than an employee normally would, the holdback provision, and the indemnification provision. Plaintiff also argued that even if Guaranteed's failure to disclose the payment to Samutin did not violate RESPA or TILA, the failure to disclose the payment still violated the Act in that it constituted the omission of a material fact in the conduct of trade or commerce which would have affected plaintiff's decision whether to accept the terms of the loan. Plaintiff also responded that Samutin and Guaranteed owed him a fiduciary duty to disclose any and all payments to third parties and violated that duty in failing to disclose the payment to Samutin.

In their subsequent response, defendants asserted that Guaranteed was the primary lender for purposes of plaintiff's mortgage and that the sale of plaintiff's loan to Option One was a secondary market transaction, which relieved Guaranteed of any requirements to disclose secondary payments to plaintiff, pursuant to federal regulations promulgated under RESPA. 24 C.F.R. § 3500.5 (2004). Defendants reasoned that because neither Guaranteed nor Samutin realized any financial gain until the previously closed mortgage was sold, they were not under any obligation to disclose the gains to plaintiff. Defendants also argued that their compliance with RESPA and TILA served as a complete defense to liability under the Act, and that neither Samutin nor Guaranteed acted as a broker in dealing with plaintiff and thus owed him no fiduciary duty to disclose the method of payment Samutin would receive for originating the loan.

In his surreply, plaintiff contended that Guaranteed was not exempt from RESPA disclosure requirements because Samutin was not a *bona fide* employee of Guaranteed in that Guaranteed exercised little control over the time and manner of his work, Samutin was compensated only for the loans he generated and received no other pay or benefits, and Samutin originated loans for his own commercial lending business, Phinix Equities.

The trial court granted summary judgment on all counts, finding that there were no issues of material fact as to defendants' allegations that Guaranteed's payment to Samutin constituted compensation from an employer to an employee and that the payment was the result of a secondary market transaction and therefore did not violate RESPA, TILA, or the Act.

On appeal, plaintiff contends that: (1) the trial court erred in granting summary judgment on his RESPA claim where genuine issues of material fact existed as to whether Samutin was a *bona fide* employee of Guaranteed and as to whether Samutin acted as a mortgage broker; (2) the trial court erred in granting summary judgment on his TILA claim when genuine issues of material fact remained as to whether the payment to Samutin constituted a finance charge required to be disclosed under TILA; (3) the trial court erred in granting summary judgment on his Act claim when genuine issues of material fact remained as to whether Guaranteed's failure to disclose the payment to Samutin constituted an omission of material fact; and (4) the trial court erred in granting summary judgment on his breach of fiduciary duty claim when genuine issues of material fact remained as to whether Samutin breached a fiduciary duty to plaintiff by not disclosing Guaranteed's payment to him.

This court reviews a trial court's grant of summary judgment *de novo. Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001). Summary judgment is appropriate only where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 2002); *Morris*, 197 Ill. 2d at 35. A trial court is required to construe the record against the moving party and may only grant summary judgment if the record shows that the movant's right to relief is clear and free from doubt. *People ex rel. Department of Labor v. MCC Home Health Care, Inc.*, 339 Ill. App. 3d 10, 19 (2003). If disputes as to material facts exist or if reasonable minds may differ with respect to the inferences drawn from the evidence, summary judgment may not be granted. *MCC Home Health Care*, 339 Ill. App. 3d at 19.

Plaintiff initially contends that the trial court erred in granting summary judgment because there is a genuine issue as to Samutin's status with Guaranteed, which would affect the nature of Guaranteed's payment to him and its obligation to disclose the payment to plaintiff. Specifically, plaintiff argues that Samutin had the right to control the manner and method of how his duties with Guaranteed were carried out, that Samutin's contract and payment schedule with Guaranteed indicate that Guaranteed had little control over the method and manner of Samutin's work, and that the payment to Samutin was classified as a "yield spread premium," a term commonly used to describe a payment from a mortgage lender to a mortgage broker for securing a loan. Plaintiff also points out that Samutin operated another mortgage lending company at the same time that he performed services for Guaranteed. Plaintiff contends that these facts indicate that Samutin

acted more as an independent broker than an employee with regard to Guaranteed and thus the payment from Guaranteed to Samutin was subject to the disclosure requirements of RESPA and TILA.

Defendants respond only that they have "been steadfast in their position that Samutin was an employee of Guaranteed" and offer no legal argument or authority to support their stance. Under Illinois Supreme Court rules, a party who fails to argue or cite authority in support of a point waives the issue for purposes of appeal. 177 Ill. 2d R. 341(e)(7). No amount of steadfastness relieves a party of its obligation to abide by this rule in presenting its arguments on appeal. Defendants argue that the issue of Samutin's employment status is not the crux of the case and that the nature of the transaction between Guaranteed and Option One is the deciding issue. While that may be, defendants have conceded plaintiff's first claim, and because we find that there are issues of fact remaining as to Samutin's status with Guaranteed, we conclude that summary judgment was improperly granted in this instance.

■ RESPA prohibits the giving and acceptance of any undisclosed fees or kickbacks pursuant to any referral agreements regarding real estate settlement services as well as the giving and acceptance of splits or percentages of charges for the rendering of settlement services other than for services actually performed. 12 U.S.C. §§ 2607(a), (b) (1994). However, RESPA allows payments of *bona fide* salaries or compensation for settlement services performed (12 U.S.C. § 2607(c)(2) (1994)), and Department of Housing and Urban Development (HUD) regulations allow payments from lenders to their *bona fide* employees for generating business (24 C.F.R. § 3500.14(g)(1)(vii) (2004)), without disclosure to the borrower.

The trial court determined that there was no issue of material fact as to Samutin's status as an employee of Guaranteed and concluded that the payment therefore was not subject to the disclosure requirements of RESPA. We disagree.

■ For purposes of our review, we rely on the definition of "employee" as stated in the Illinois Wage Payment and Collection Act (820 ILCS 115 *et seq.* (West 2002)) (Wage Act). The Wage Act defines an "employee" as "any individual permitted to work by an employer in an occupation," but it excludes any individual:

> "(1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer, and in fact; and
>
> (2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer unless the employer is in the business of contracting with third parties for the placement of employees; and

(3) who is in an independently established trade, occupation, profession or business." 820 ILCS 115/2 (West 2002).

Plaintiff contends, as he did before the trial court, that Guaranteed did not exercise a sufficient amount of control over Samutin's work for him to qualify as an employee and that Samutin's involvement with another lending company militates against any finding that Guaranteed's payment to Samutin with regard to plaintiff's loan was exempt from disclosure pursuant to HUD regulations.

In interpreting the Wage Act, we read its provisions in the conjunctive, as dictated by the rules of statutory interpretation, which require courts to ascertain and give effect to the intent of the legislature. *People v. Maggette*, 195 Ill. 2d 336, 348 (2001). Our supreme court reached a similar conclusion in interpreting section 212 of the Unemployment Insurance Act (820 ILCS 405/212 (West 2000)) in *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380 (2001). The court held that all three factors to consider in an individual's status as an employee as opposed to an independent contractor (similar to those outlined in the Wage Act), because they are phrased in the conjunctive, must be satisfied before an individual can be classified as an independent contractor. *AFM Messenger Service*, 198 Ill. 2d at 397; *cf. Anderson v. First American Group of Cos.*, 353 Ill. App. 3d 403 (2004); *Soh v. Target Marketing Systems*, 353 Ill. App. 3d 126 (2004).

■ Moreover, the Illinois Administrative Code states that "[a]ll three conditions enumerated in Section 2 of the [Wage] Act must be satisfied for the independent contractor exemption to apply." 56 Ill. Adm. Code § 300.460 (2004). Accordingly, the word "and" between each provision of the Wage Act requires that all three prongs be met in order for an individual to fall within the statutory exemption of the Wage Act's definition of "employee." Based on this interpretation of section 2 of the Wage Act, we find that, at the very least, an issue of material fact remained as to Samutin's status as an employee at the time of defendants' motion for summary judgment.

As to the first criterion, an individual's and his employer's relative control over the performance of his work, the Administrative Code defines "control" as "the existence of general control or right to general control, even though the details of work are left to an individual's judgment." 56 Ill. Adm. Code § 300.460(a)(1) (2004). In interpreting the analogous provisions of the Unemployment Insurance Act, Illinois courts have held that control means that the employer has the right to control and direct the worker, not only as to the work to be done, but also as to how it should be done, whether or not that control is in fact exercised. *Enesco Corp. v. Doherty*, 314 Ill. App. 3d

123, 133 (2000), citing 56 Ill. Adm. Code § 2732.200(g) (1991). Control and direction are indicated when the employer issues assignments and sets quotas, schedules work and imposes time requirements, has the right to change the methods the worker uses in performing his services, requires the individual to follow a routine or schedule, requires the worker to report to a specific location at regular intervals, requires the worker to furnish a record of his time, engages the worker on a permanent basis, reimburses the worker for expenses incurred, provides pensions, bonuses, and sick pay, reports the worker's income to the Internal Revenue Service and deducts taxes, does not allow the worker to engage in other employment, restricts the worker in choice of customers, limits the territory where the worker performs, has the right to discharge, and requires attendance at meetings and training sessions. 56 Ill. Adm. Code §§ 2732.200(g)(1) through (g)(25) (1991).

The record in this case indicates that Guaranteed never issued assignments, set quotas, or imposed time requirements on Samutin. Samutin himself stated that he worked hours of his own choosing and did not have to abide by a specific routine or schedule. Guaranteed did not provide Samutin with a pension, bonuses, or sick pay, nor did it restrict Samutin in his choice of customers or limit his territory. However, Samutin did attend weekly meetings with Ciardelli, and the contract apparently engaged Samutin on an exclusive and permanent basis. Guaranteed did report Samutin's income and had the right to discharge Samutin. Under these circumstances, we believe an issue of fact exists as to Guaranteed's right to control the scope and direction of Samutin's work.

The second criterion, the work performed being outside the employer's normal course of business or being performed outside all the employer's places of business, is satisfied if either condition applies. 56 Ill. Adm. Code § 2732.200(f) (1991). When considering the employer's usual course of business, Illinois courts focus on whether the individual performs services that are necessary to the business of the employer or merely incidental. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 386 (2002). In this case, Samutin solicited plaintiff to obtain a loan from Guaranteed, processed the application, and aided in executing the closing, all duties that are obviously necessary to Guaranteed's business of providing mortgage loans.

However, the second condition could be met in this case and qualify Samutin as an independent contractor. An employer's place of business is not limited only to its own home offices, but can extend to any location where workers regularly represent an employer's interest. *Carpetland U.S.A.*, 201 Ill. 2d at 389-91. On this record, we are aware

that Samutin worked out of a Coldwell Banker office through an arrangement between Guaranteed and the director of the Coldwell Banker office. However, it is unclear whether he outwardly represented Guaranteed's interests in that location or any other location in which he might have had dealings with plaintiff. With these limited facts, a reasonable mind could have found this criterion fulfilled or unfulfilled.

The final factor, engagement in an independently established trade or business, applies when the individual has a proprietary interest in the business which he can sell, give away, or operate without any hindrance from any other party. 56 Ill. Adm. Code § 2732.200(e) (2001). This requires that the individual's entrepreneurial enterprise have a degree of economic independence such that the enterprise could survive any relationship with the particular person contracting for services. *Carpetland U.S.A.*, 201 Ill. 2d at 393. The factors indicating whether an individual is engaged in an independently established enterprise include: the individual's interest is not subject to cancellation upon severance of the relationship, the individual has invested capital in the business, the individual gains the profits and bears the losses of the enterprise, the individual makes his services available to the general public and may perform those services when he chooses to do so, the individual hires his own employees and maintains his own office or shop, the employing unit does not represent the individual as its employee to its customers, the individual maintains his own business listing, and the individual has obtained his own license in the case that the services provided require a license to execute. 56 Ill. Adm. Code §§ 2732.200(e)(1) through (e)(13) (2001). The crucial inquiry is not whether the purported independently operated business did survive apart from the employing unit, but whether it could have survived. *Carpetland U.S.A.*, 201 Ill. 2d at 394.

In this case, Samutin allegedly operated his own commercial lending enterprise, Phinix Equities, separately from Guaranteed. However, the circumstances as to its operation and its relative degree of independence from Guaranteed are not clear from this record. It is unclear when and whether Samutin operated Phinix at the same time that he performed services for Guaranteed and whether he invested capital in, earned profits from, and bore the losses incurred by Phinix. Because several other circumstances pertaining to the independence of Phinix remain unknown, we find that an issue of material fact remained as to this portion of the employer-independent contractor test.

Based on the foregoing analysis, we conclude that genuine issues of material fact remained as to Samutin's status as an employee of Guaranteed and that Guaranteed's right to summary judgment was not clear and free from doubt on that issue.

Defendants invest more effort in their contentions on appeal that the payment to Samutin occurred solely as the result of the sale of plaintiff's loan to Option One and that the sale was exempt from RESPA disclosure requirements as a secondary market transaction. Defendants argue that the payment to Samutin did not have to be disclosed because it was executed as commission for the profit Guaranteed realized as a result of selling plaintiff's loan to Option One, a secondary market transaction. Plaintiff differs and maintains that while the sale to Option One may have been a legitimate secondary transaction, the payment from Guaranteed to Samutin did not occur in the secondary market but, rather, as a result of Samutin acting as a *de facto* mortgage broker between plaintiff and Guaranteed.

■ RESPA forbids kickbacks or referral fees for the provision of real estate settlement services, as well as splitting settlement fees with another person, unless such payments are furnished for services actually performed. 12 U.S.C. §§ 2607(a), (b) (1994). However, RESPA exempts fees and charges paid in connection with secondary market transactions involving a *bona fide* transfer of a loan, taking into consideration the real source of funding and the real interest of the lender. 24 C.F.R. § 3500.5(b)(7) (2004). However, "table-funded" transactions, *i.e.*, a closing at which a loan is funded by contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds, are not secondary market transactions and are thus subject to RESPA disclosure requirements. 24 C.F.R. § 3500.2(b) (2004).

●5 In order to prevail on a claim of undisclosed settlement fees paid by a lender to a broker under RESPA, a plaintiff must present some evidence that his loan was table funded and that the broker received undisclosed fees as a result of the closing. *Chandler v. Norwest Bank Minnesota, National Ass'n*, 137 F.3d 1053, 1056 (8th Cir. 1998). The federal court of appeals has held that sales of mortgage loans from one lender to another are legitimate secondary market transactions, even where the sale has been prearranged, as long as the initial lender is the real source of funding and closes the loan in its own name. *Chandler*, 137 F.3d at 1056-57; *Moreno v. Summit Mortgage Corp.*, 364 F.3d 574, 576-77 (5th Cir. 2004).

■ In this case, Ciardelli testified that it funded plaintiff's loan through its warehouse line of credit with Indy Mac, later sold the loan at a profit to Option One, and paid Samutin a commission based on the gain it realized from the resale. From this record, it is apparent that Guaranteed was the real source of funding for plaintiff's loan and closed the loan in its own name. Accordingly, we find that the sale of plaintiff's loan to Option One was a *bona fide* secondary market

transaction and that the fees paid as a result were not subject to RESPA disclosure requirements. Nevertheless, for purposes of considering the additional issues raised in defendants' motion for summary judgment, and whether or not the trial court determines Samutin to be Guaranteed's employee, we believe that the payment to Samutin was earned at the time plaintiff's refinancing loan was closed, even though it may not have been paid until after the loan was resold to Option One.

Accordingly, we reverse and remand for further proceedings so that additional facts may be elucidated as to these issues.

■ As an ancillary matter, we uphold the trial court's denial of plaintiff's motion for class certification. The federal district court and court of appeals have followed HUD policy statements that the reasonableness tests and damage calculations prescribed under RESPA are transaction-specific inquiries and as such militate against class-wide adjudications. *In re Old Kent Mortgage Co. Yield Spread Premium Litigation*, 191 F.R.D. 155, 163-64 (D. Minn. 2000); *Glover v. Standard Federal Bank*, 283 F.3d 953, 965-66 (8th Cir. 2002). Because this suit involved specific inquiries into the status of specific parties and specific payments, we find that the trial court properly denied plaintiff's motion for class certification.

For the foregoing reasons, we reverse in part and affirm in part the judgment of the circuit court.

Affirmed in part and reversed in part, with directions.

THEIS and QUINN, JJ., concur.