In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 15-1109 & 15-1110

THOMAS COSTELLO, MEGAN BAASE KEPHART,
and OSAMA DAOUD, on behalf of themselves
and all other persons similarly situated,
known and unknown,

*Plaintiffs-Appellees/Cross-Appellants*,

*v.*

BEAVEX, INCORPORATED,

*Defendant-Appellant/Cross-Appellee*.

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CV 7843 — **Virginia M. Kendall**, *Judge*.

_____

ARGUED SEPTEMBER 18, 2015 — DECIDED JANUARY 19, 2016

_____

Before BAUER, KANNE, and ROVNER, *Circuit Judges*.

KANNE, *Circuit Judge*. BeavEx, Inc. is a same-day delivery service that enlists 104 couriers to carry out its customers' orders throughout the state of Illinois. By classifying its couriers as independent contractors instead of employees, Beav-

Ex is not subject to several state and federal employment laws, including the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115, which, among other things, prohibits an employer from taking unauthorized deductions from its employees' wages. Plaintiffs, and the putative class, were or are individual couriers who allege that they should have been classified as employees of BeavEx for purposes of the IWPCA, and accordingly, any deductions taken from their wages were done so illegally. Complicating Plaintiffs' position is the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. § 14501(c)(1), which expressly preempts any state law that is "related to a price, route, or service of any motor carrier." BeavEx contends that the FAAAA preempts the IWPCA, making any deductions it withheld from its couriers' wages valid.

The district court held that the FAAAA does not preempt the IWPCA and so denied BeavEx's motion for summary judgment. At the same time, the district court denied Plaintiffs' motion to certify the class but granted their motion for partial summary judgment, holding that Plaintiffs are employees under the IWPCA. This interlocutory appeal presents for our review the question of whether the FAAAA preempts the IWPCA and whether the district court properly denied class certification. For the following reasons, we affirm the district court's denial of BeavEx's motion for summary judgment, and we vacate its denial of class certification and remand for further proceedings.

## I. BACKGROUND

*A. Factual Background*

BeavEx provides same-day delivery and logistics services to its customers. To perform its services in Illinois, BeavEx engages 104 couriers, which it classifies as independent contractors for all purposes. Plaintiffs, and the class they seek to represent, are approximately 825 individual couriers who performed delivery services for BeavEx in Illinois from October 1, 2002, to the present and were not treated as employees under the IWPCA.

BeavEx classifies its couriers as independent contractors under all state and federal labor laws. Some of BeavEx's couriers are incorporated, while others are not. Some couriers, with BeavEx's approval, use subcontractors to complete deliveries. To become a courier for BeavEx, a driver must sign an Owner/Operator Agreement and a contract with Contract Management Services. Under the agreements, BeavEx has the authority to terminate a courier's contract for improper conduct. BeavEx also may terminate a contract if a customer on the courier's route stops contracting with BeavEx.

BeavEx pays its couriers per route or per delivery, rather than per hour. Couriers drive their own vehicles, which they lease to BeavEx. Couriers must wear uniforms with the BeavEx logo, and their cars must bear the BeavEx logo, phone number, and Illinois Commerce Commission number. BeavEx does not provide health insurance or workers' compensation and does not pay payroll taxes or unemployment contributions for its couriers. In addition, BeavEx deducts expenses from its couriers' wages for occupational accident

insurance, cargo insurance, uniforms, scanners, cellular phone fees, and "chargebacks" for unsatisfactory deliveries.

BeavEx has ten individuals it considers employees who tend to administrative and warehouse duties in Illinois. BeavEx pays these employees a salary or an hourly wage and provides health insurance and other benefits. BeavEx also pays payroll taxes and makes unemployment and workers' compensation insurance contributions for these employees.

*B. Procedural Background*

Plaintiffs filed suit against BeavEx on October 1, 2012, alleging that BeavEx misclassified its couriers as "independent contractors" instead of "employees" under Illinois statutory and common law. Plaintiffs alleged that the misclassification caused (1) a deprivation of overtime wages in violation of the Illinois Minimum Wage Law; (2) illegal deductions from Plaintiffs' wages in violation of the IWPCA; and (3) unjust enrichment of BeavEx.

On August 13, 2013, BeavEx moved for summary judgment on all of Plaintiffs' claims.[1] With respect to count two, BeavEx argues that the FAAAA expressly preempts the IWPCA's definition of "employee" because it is "related to" a price, route, or service. Plaintiffs, on September 23, 2013, contemporaneously filed a motion for class certification and a motion for partial summary judgment on count two, argu-

---

[1] Because this appeal was certified only on the question of whether prong two of the IWPCA's test for employment is preempted, we do not address counts one and three, which arise under different state laws.

ing that Plaintiffs are "employees" within the meaning of the IWPCA.

The district court disposed of the three motions in one order. The district court denied BeavEx's motion for summary judgment, holding that the FAAAA does not preempt the IWPCA.

The district court then considered and denied Plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23(b)(3). Plaintiffs met the numerosity, typicality, and commonality prerequisites of Rule 23(a), the court decided. The district court held, however, that Plaintiffs did not fulfill the predominance requirement of Rule 23(b)(3) because the first prong of the IWPCA's three-part employee test requires an individualized inquiry to determine if the employer controls the worker "in fact." "Failure to acknowledge the individualized inquiry required by the first prong [of the IWPCA] because the second prong can be decided through common facts," the district court concluded, "would be the same as ruling on the merits," which is improper at the class certification stage. *Costello v. BeavEx, Inc.*, 303 F.R.D. 295, 308 (N.D. Ill. 2014).

Finally, the district court granted Plaintiffs' motion for partial summary judgment, concluding that Plaintiffs are "employees" of BeavEx within the meaning of the IWPCA because BeavEx could not satisfy the second prong of the IWPCA's test for employment.

The district court certified for interlocutory appeal the question of whether the FAAAA preempts the IWPCA. Plaintiffs filed a cross-appeal contesting the district court's

denial of class certification. This court granted leave to appeal.

## II. ANALYSIS

BeavEx challenges the district court's determination that the FAAAA does not preempt the IWPCA, arguing that a law that prohibits its use of independent contractors is related to a price, route, or service and is therefore preempted. Plaintiffs' cross-appeal seeks review of the district court's refusal to certify the proposed class. According to Plaintiffs, the district court abused its discretion by finding that common issues did not predominate when common evidence would show that BeavEx cannot satisfy prong two of the IWPCA's employment test. We treat each issue in turn.

### A. FAAAA Preemption

We review a district court's federal preemption decision *de novo. Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1045–46 (7th Cir. 2013). The touchstone of preemption analysis is the intent of Congress. *Id.* at 1046 (citing *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)).

### 1. The IWPCA

The Illinois General Assembly passed the IWPCA in 1973 "to provide employees with a cause of action for the timely and complete payment of earned wages or final compensation, without retaliation from employers." *Byung Moo Soh v. Target Mktg. Sys., Inc.*, 817 N.E.2d 1105, 1107 (Ill. App. Ct. 2004) (quotation marks omitted). In particular, the IWPCA prohibits employers from taking deductions from employees' wages unless the deductions are "(1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; [or] (4) made

with the express written consent of the employee, given freely at the time the deduction is made." 820 ILCS 115/9.

The IWPCA provides a broad definition of what constitutes an "employee" using a three-prong test commonly referred to as an ABC test. *Id.* 115/2. The test is conjunctive, meaning that if an employer cannot satisfy each of the prongs, then the individual must be classified as an employee for purposes of the IWPCA. *See Novakovic v. Samutin*, 820 N.E.2d 967, 973 (Ill. App. Ct. 2004).

At issue in this case is the second prong of the ABC test. The second prong requires that to treat an individual as an independent contractor, the individual must "perform[] work which is … outside the usual course of business … of the employer." 820 ILCS 115/2. Plaintiffs argued, and the district court found, that because BeavEx is a delivery company, its delivery couriers do not perform work outside the usual course of BeavEx's business. Accordingly, the district court held, BeavEx's couriers must be classified as employees within the meaning of the IWPCA.

### 2. The FAAAA

The district court's holding that the couriers are "employees" under the IWPCA does not, however, end our analysis of the issue. That is because BeavEx contends that the FAAAA provision that preempts any state law "related to a price, route, or service of any motor carrier" applies to the IWPCA's definition of employee. 49 U.S.C. § 14501(c)(1).

### a. History of the FAAAA

The Interstate Commerce Act of 1887, ch. 104, 24 Stat. 379, set into motion nearly a century of federal regulation of the transportation industry. The Interstate Commerce Com-

mission first regulated the railroad industry, then in 1935 Congress added the trucking industry, Motor Carrier Act of 1935, ch. 498, 49 Stat. 543, and in 1938, the airline industry, Civil Aeronautics Act of 1938, ch. 601, 52 Stat. 973.

But by the 1970s, a movement to deregulate the transportation industry was taking off. In 1978, Congress "determin[ed] that 'maximum reliance on competitive market forces'" would better serve the air transportation industry, and so began the process of deregulation. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992). Congress enacted the Airline Deregulation Act of 1978, Pub. L. No. 95-504, 92 Stat. 1705, which dismantled federal regulation of the airline industry. In addition, the ADA sought to "ensure that the States would not undo federal deregulation with regulation of their own." *Morales*, 504 U.S. at 378. To that end, Congress provided in the ADA that "no State … shall enact or enforce any law … relating to rates, routes, or services of any air carrier." 92 Stat. at 1708.

Trucking-industry deregulation was not far behind. In 1980, Congress passed the Motor Carrier Act of 1980, Pub. L. No. 96-296, 94 Stat. 793, which ended the federal government's management of the trucking industry. Fourteen years later, to complete deregulation of the trucking industry, Congress enacted a preemption provision in the Federal Aviation Administration Authorization Act of 1994, Pub. L. No. 103-305, 108 Stat. 1569. The FAAAA borrowed the preemptive language of the ADA, providing that "a State … may not enact or enforce a law … related to a price, route, or service of any motor carrier … with respect to the transportation of property." *Id.* at 1606.

*b. The Supreme Court's Interpretation of the FAAAA*

The Supreme Court has on several occasions interpreted the "related to" language contained in the FAAAA and the ADA. The Court has interpreted the shared language of the two statutes identically. *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008).

The preemptive scope of the FAAAA is broad. *See Morales*, 504 U.S. at 383–84. A state law is preempted if it has a direct connection with or specifically references a carrier's prices, routes, or services. *Id.* at 384. More expansively, a state law may be preempted even if the law's *effect* on prices, routes, or services "is only indirect." *Id.* at 386 (quotation marks omitted). This means "that pre-emption occurs at least where state laws have a 'significant impact' related to Congress' deregulatory and pre-emption-related objectives." *Rowe*, 552 U.S. at 371 (quoting *Morales*, 504 U.S. at 390).

Preemption, however, is not unlimited. The FAAAA does not preempt state laws "that affect fares in only a 'tenuous, remote, or peripheral … manner.'" *Id.* (quoting *Morales*, 504 U.S. at 390). In *Morales*, the Supreme Court explained that laws prohibiting gambling or prostitution, for example, were beyond the scope of FAAAA preemption. *Morales*, 504 U.S. at 390.

The Supreme Court has on four occasions elaborated on the scope of the "related to" clause of the ADA and FAAAA beginning with *Morales*, 504 U.S. 374.

In *Morales*, the National Association of Attorneys General promulgated "detailed standards governing the content and format of airline advertising, the awarding of premiums to regular customers …, and the payment of compensation to

passengers who voluntarily yield their seats on overbooked flights." 504 U.S. at 379. The attorneys general sought to enforce these "guidelines" through their states' generally applicable consumer protection statutes. *Id.* at 383.

The Court rejected the contention that a state law must actually direct the setting of rates, routes, or services or specifically target the airline industry to be preempted. *Id.* at 385–86. Instead, the Court concluded that enforcement of the guidelines through consumer-protection statutes was preempted because it "would give consumers a cause of action … for an airline's failure to provide a particular advertised fare—effectively creating an enforceable right to that fare when the advertisement fails to include the mandated explanations and disclaimers." *Id.* at 388 (citation omitted).

*American Airlines, Inc. v. Wolens* was the Supreme Court's second foray into interpreting the scope of ADA preemption. 513 U.S. 219 (1995). In *Wolens*, the plaintiffs filed suit against American Airlines under Illinois's Consumer Fraud Act and for breach of contract because of the airline's retroactive changes in the terms and conditions of its frequent flyer program. *Id.* at 224–25. The Court held that claims under the Consumer Fraud Act were preempted because they "serve[] as a means to guide and police the marketing practices of the airlines." *Id.* at 228–29. The breach-of-contract claims, however, were not preempted because they are "privately ordered obligations" that "simply hold[] parties to their agreements" and "thus do not amount to a State's enact[ment] or enforce[ment] [of] any law" for purposes of ADA preemption. *Id.* (quotation marks omitted).

The scope of the preemption clause in the FAAAA itself first appeared before the Supreme Court in *Rowe*, 552 U.S.

364. In *Rowe*, Maine enacted a statute that required Maine-licensed tobacco retailers to use a delivery service that verified the recipient's identity, legal age, signature, and government-issued photo identification. *Id.* at 368–69. The Court held that the Maine law was preempted because it "will require carriers to offer a system of services that the market does not now provide (and which the carriers would prefer not to offer)." *Id.* at 372. A state law that requires carriers to offer particular services to its customers was precisely the result that the FAAAA was designed to prevent. *Id.*

Finally, the Supreme Court revisited FAAAA preemption in *Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422 (2014). In *Northwest*, the plaintiff brought a state-law claim for breach of the implied covenant of good faith and fair dealing after Northwest terminated his "Platinum Elite" frequent-flier status. *Id.* at 1426. The Court held that the state common-law claim was preempted because "it seeks to enlarge the contractual obligations that the parties voluntarily adopt[ed]." *Id.* If, however, the state's common law "permits an airline to contract around those rules," then the state law is not preempted. *Id.* at 1433.

### c. Lower Courts' Interpretations of the FAAAA

The various courts of appeal have also grappled with resolving which laws are "related to" a price, route, or service and which laws are too "tenuous, remote, or peripheral" to fall within the ambit of FAAAA preemption.

We gave that question extensive treatment in *S.C. Johnson & Son, Inc. v. Transport Corporation of America, Inc.*, 697 F.3d 544 (7th Cir. 2012). In that case, S.C. Johnson learned that its transportation director, Milton Morris, was receiving cash,

goods, travel, and services from certain motor carriers. *Id.* at 546. In exchange, Morris was giving the carriers business they otherwise would not have received or having S.C. Johnson pay above-market rates for the transportation services. *Id.* S.C. Johnson brought five state-law claims against the motor carriers involved in Morris's scheme for: "(1) fraudulent misrepresentation by omission; (2) civil conspiracy to violate the Wisconsin bribery statute; (3) civil conspiracy to commit fraud; (4) violation of the Wisconsin Organized Crime Control Act (WOCCA); and (5) aiding and abetting a breach of fiduciary duty." *Id.* (citations omitted). We held that S.C. Johnson's claims for fraudulent misrepresentation and conspiracy to commit fraud were preempted. *Id.* at 557. S.C. Johnson's claims of bribery and racketeering, however, we held were not preempted.[2] *Id.* at 560.

The fraud claims we described as "well-meaning but widely varying paternalistic provisions designed to protect *consumers* from the rigors of the market." *Id.* at 557 (emphasis added). Enforcing these laws, therefore, amounts to a state substituting its own policy for the agreement the airline and its customers reached. *Id.*

In contrast, we described the bribery and racketeering claims as "state laws of general application that provide the backdrop for private ordering." *Id.* at 558. We acknowledged that virtually any state law, at some level, has an effect on the market price. *Id.* We used state labor laws as an example,

---

[2] We did not address the breach-of-fiduciary-duty claim because S.C. Johnson had not appealed the district court's dismissal of the claim as time-barred. *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am.*, 697 F.3d 544, 557 (7th Cir. 2012).

noting that changes to "minimum wage laws, worker-safety laws, anti-discrimination laws, and pension regulations" affect the cost of labor, and in turn, the price at which a motor carrier offers a service. *Id.* Yet, we concluded:

> [N]o one thinks that the ADA or the FAAAA preempts these and the many comparable state laws because their effect on price is too "remote." Instead, laws that regulate these inputs operate one or more steps away from the moment at which the firm offers its *customer* a service for a particular price.

*Id.* (citations omitted and emphasis added).

We also turn to our sister circuits' treatment of employment laws for additional guidance. Most relevant is the First Circuit's recent opinion in *Massachusetts Delivery Association v. Coakley* ("*MDA I*"), 769 F.3d 11 (1st Cir. 2014). In *MDA I*, the First Circuit addressed a Massachusetts law that used an ABC test for employment that is substantially similar to the IWPCA's. The district court found that the second prong of the ABC test was not preempted because the fact "[t]hat a regulation on wages has the potential to impact costs and therefore prices is insufficient to implicate preemption." *Id* at 21 (alteration in original and quotation marks omitted).

But the First Circuit reversed and remanded for further consideration. *Id.* at 23. The First Circuit declined to adopt a categorical rule exempting all generally applicable employment laws from preemption. *Id.* at 20. Instead, the court highlighted an error in the district court's analysis: when evaluating FAAAA preemption, a court should examine the *potential* impact of the law to determine if the effect of the law could be significant. *Id.* at 21. In addition, the district

court only considered the impact of the law on the carriers' *prices*, not their routes and services. *Id.* at 21–22.

After remand, the district court held that the FAAAA did preempt the second prong of the Massachusetts statute's ABC test for employment. *Mass. Delivery Ass'n v. Healey* ("*MDA II*"), No. 10-cv-11521, 2015 WL 4111413, at *10 (D. Mass. July 8, 2015). The court found that the carrier would now have to alter its routes to begin at couriers' homes, pay stem miles, provide meal and rest breaks, maintain a fleet of delivery vehicles, and eliminate on-demand delivery services or pay employees to be "on call." *Id.* at *4–6. All of these changes, the district concluded, would have a significant impact related to the company's prices, routes, and services, and therefore, the statute was preempted. *Id.* at *10.

No other circuits have addressed the precise question of where to draw the preemption line when state law mandates classification of couriers as employees for particular purposes. What our sister circuits do show is that the effect of a labor law, which regulates the motor carrier *as an employer*, is often too "remote" to warrant FAAAA preemption.

The First Circuit underscored this distinction in *DiFiore v. American Airlines, Inc.*, in which the court held that a Massachusetts law prohibiting an employer from keeping a payment advertised as a "service charge" was preempted. 646 F.3d 81, 88 (1st Cir. 2011). This was so because the law "directly regulates how an airline service is performed and how its price is displayed to customers—not merely how the airline behaves as an employer or proprietor." *Id.*

The effects of generally applicable meal and rest break laws, the Ninth Circuit concluded, are also too remote to

warrant preemption. *Dilts v. Penske Logistics, Inc.*, 769 F.3d 637, 650 (9th Cir. 2014). The court explained:

> [G]enerally applicable background regulations that are several steps removed from prices, routes, or services, such as prevailing wage laws or safety regulations, are not preempted, even if employers must factor those provisions into their decisions about the prices that they set, the routes that they use, or the services that they provide.

*Id.* at 646.

Several circuits have held that claims of employment discrimination or retaliatory discharge are not preempted by the FAAAA. For example, in *Branche v. Airtan Airways, Inc.*, the Eleventh Circuit noted that "[i]t is true that an airline's employment decisions may have an incidental effect on its 'services,'" but the court held that the incidental effect of employment-retaliation claims was too remote to warrant preemption. 342 F.3d 1248, 1259–60 (11th Cir. 2003); *see also Wellons v. Nw. Airlines, Inc.*, 165 F.3d 493, 495 (6th Cir. 1999) (holding that race-discrimination claim was not preempted); *Anderson v. Am. Airlines, Inc.*, 2 F.3d 590, 597–98 (5th Cir. 1993) (holding that retaliatory-discharge claim was not preempted because its effect on airline services was too remote).

Our opinion in *S.C. Johnson* and the decisions of our sister circuits confirm that there is a relevant distinction for purposes of FAAAA preemption between generally applicable state laws that affect the carrier's relationship with its customers and those that affect the carrier's relationship with its workforce. Laws that affect the way a carrier interacts with its customers fall squarely within the scope of FAAAA

preemption. Laws that merely govern a carrier's relationship with its workforce, however, are often too tenuously connected to the carrier's relationship *with its consumers* to warrant preemption. The Supreme Court's preemption decisions do not counsel a different conclusion. *See e.g.*, *Morales*, 504 U.S. at 388 (preempting state-law claim because "it would give *consumers* a cause of action … for an airline's failure to provide a particular advertised prices" (emphasis added and citation omitted)); *Rowe*, 552 U.S. at 372 (preempting a state law that determined "the services that motor carriers will provide" to their customers).

*3. Application of the FAAAA to the IWPCA*

With this background in mind, we turn to the question presented for our review: whether the express-preemption provision of the FAAAA preempts prong two of the definition of employee contained in the IWPCA.

There are no bright-line rules to resolve whether a state law is preempted. Instead, we must "decide whether the state law at issue falls on the affirmative or negative side of the preemption line." *S.C. Johnson*, 697 F.3d at 550. Because the IWPCA is not specifically directed to motor carriers, the task before us is to determine whether the IWPCA will have a significant impact on the prices, routes, and services that BeavEx offers to its customers. We conclude that it does not.

BeavEx asks this court to apply the approach articulated by the First Circuit in *MDA I*, which it contends leads to the conclusion that a law that requires a motor carrier to classify its couriers as employees instead of independent contractors is preempted by the FAAAA. BeavEx's reliance on *MDA I* for

its conclusion is misplaced, and we conclude that *MDA I* counsels a different result here.

Importantly, the Massachusetts statute at issue in *MDA I* triggers far more employment laws than the employment definition contained in the IWPCA, *MDA I*, 769 F.3d at 15 n.1; *see also MDA II*, 2015 WL 4111413, at *4–6, which led the district court to hold it preempted. We, however, consider the impact that the *IWPCA* would have on BeavEx's business model. Empirical evidence is not mandatory for this court to conclude that the IWPCA is preempted. *See, e.g. Rowe*, 552 U.S. at 373–74 (not relying on empirical evidence to find FAAAA preemption). Instead, we conduct an individualized inquiry that "engage[s] with the real *and logical* effects of the state statute." *MDA I*, 769 F.3d at 20 (emphasis added).

The scope of the IWPCA is limited, and Plaintiffs are only seeking to enforce the provision prohibiting wage deductions. BeavEx has not cited any authority showing that the IWPCA would trigger state employment laws to the extent of those in *MDA I*. Because the scope of the IWPCA is limited, its logical effect is necessarily more limited than the statute at issue in *MDA I*. We find this distinction relevant and conclude that the impact of the IWPCA is too "tenuous, remote, or peripheral" to warrant FAAAA preemption.

Furthermore, the IWPCA is precisely the type of background labor law that this court alluded to in *S.C. Johnson*—a law that only indirectly affects prices by raising costs. The IWPCA is a law that regulates a labor input and "operate[s] one or more steps away from the moment at which the firm offers its *customers* a service for a particular price." *S.C. Johnson*, 697 F.3d at 558 (emphasis added). In other words, the IWPCA regulates the motor carrier *as an employer*, and any

indirect effect on prices is too tenuous, remote, or peripheral. *Cf. DiFiore*, 646 F.3d at 87 ("Importantly, the tips law does more than simply regulate the employment relationship between the skycaps and the airline."); *Tobin v. Fed. Express Corp.*, 775 F.3d 448, 456 (1st Cir. 2014) (distinguishing between state laws that regulate "how [a] service is performed (preempted) and those that regulate how an airline behaves as an employer or proprietor (not preempted)" (quotation marks omitted)).

That is not to say that we are adopting "a categorical rule exempting from preemption all generally applicable state labor laws," *MDA I*, 769 F.3d at 20, but rather, we conclude that the IWPCA's effect on the cost of labor is too tenuous, remote, or peripheral to have a significant impact on BeavEx's setting of prices for its consumers.

BeavEx asserts that if the IWPCA is not preempted, it would

> be subject to numerous legal obligations toward those couriers that do not currently apply, including minimum wage, maximum hour, and overtime requirements, mandated payroll tax payments and withholding requirements, mandated workers' compensation and medical insurance, and mandated contributions to state unemployment insurance, in addition to remedies specifically requested in Plaintiffs' complaint, which include requirement [sic] BeavEx to purchase or lease, store, and maintain automobiles for its couriers.

(Appellant's Br. at 16.)

Conspicuously absent from BeavEx's parade of horrors is any citation of authority showing that it would be required

to comply with this slew of federal and state laws. We do not accept BeavEx's bare assertion that its couriers will need to be classified as employees for all purposes. Instead, the only substantive requirement of the IWPCA that Plaintiffs seek to enforce is that BeavEx refrain from making deductions from its couriers' pay without "express written consent of the employee, given freely at the time the deduction is made." 820 ILCS 115/9.

As a result of our holding, BeavEx will have to choose whether to absorb the costs it previously deducted or pass them along to its couriers through lower wages or to its customers through higher prices. We do not see, however, how the increased labor cost will have a *significant* impact on the prices that BeavEx offers to its customers. BeavEx has offered no evidence to persuade us differently.

In fact, the only numerical figure BeavEx alleges is that the human resources department would incur an additional cost of $185,000 per year to employ a human resources professional to oversee the Illinois workforce. BeavEx has offered no frame of reference upon which we could conclude that this $185,000 would significantly impact BeavEx's prices.

Even less obvious is any significant impact that prohibiting deductions would have on BeavEx's routes or services. We agree with BeavEx that reclassifying its couriers as employees for all purposes could undermine its ability to continue offering on-demand delivery services. When BeavEx gets on-demand orders from customers, it contacts a courier and offers the delivery. The courier is then free to accept or decline. In order to offer the same on-demand service with an employee workforce, BeavEx would have to pay couriers to be "on call," and couriers would be unable to pursue oth-

er work opportunities during their on-call time. Such a requirement could have a significant impact on the ability of BeavEx to offer on-demand services, which its customers currently desire.

We do not see, however, how ruling that the IWPCA applies to BeavEx's couriers would create that situation. BeavEx has offered no specific evidence of the effect of the *IWPCA* on its business model, instead preferring to rely on conclusory allegations that compliance with the IWCPA will require BeavEx to switch its entire business model from independent-contractor-based to employee-based. We see no basis for concluding that the IWPCA would require that change given that the federal employment laws and other state labor laws have different tests for employment status. *See, e.g.*, 26 U.S.C. § 3121(d)(2) (for purposes of the federal tax code, an employee is "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee"); Ill. Admin. Code tit. 56, § 210.110 (providing six factors to determine if an individual is an employee for purposes of the Illinois Minimum Wage Law, 820 ILCS 105).

BeavEx also raises concerns that if we do not hold that the IWPCA is preempted, it will "require motor carriers to change their business practices from state to state to comply with a patchwork of random state-level requirements." (Appellant's Br. at 15.) We find the Supreme Court's decision in *Northwest* instructive. In that case, the petitioners argued that *all* state-law breach-of-implied-covenant claims must be preempted; otherwise, "airlines [would] be faced with a baffling patchwork of rules, and the deregulatory aim of the ADA will be frustrated." *Northwest*, 134 S. Ct. at 1433. The

Court rejected that argument, holding that a State's implied-covenant laws are not preempted if the State's law "permits an airline to contract around those rules." *Id.* The Court added, "[w]hile the inclusion of such a provision may impose transaction costs and presumably would not enhance the attractiveness of the program, an airline can decide whether the benefits of such a provision are worth the potential costs." *Id.*

The IWPCA benefits from this same flexibility—the IWPCA's prohibition on deductions from wages can be contracted around by "express written consent of the employee, given freely at the time the deduction is made." 820 ILCS 115/9. It is up to BeavEx to decide whether to stop making deductions or absorb the transaction costs of acquiring consent. What is clear is that BeavEx has not demonstrated to this court that preventing it from deducting from its couriers' wages or the transaction costs associated with acquiring consent to do so would have a significant impact related to its prices, routes, or services.

Because we hold that the IWPCA is not "related to a price, route, or service of any motor carrier," we decline to address the second prong of the preemption analysis, which requires that the state law be related to a price, route, or service "with respect to the transportation of property." 49 U.S.C. § 14501(c)(1); *see also Dan's City Used Cars, Inc. v. Pelkey*, 133 S. Ct. 1769, 1778 (2013) ("[T]he addition of the words 'with respect to the transportation of property' … massively limits the scope of preemption ordered by the FAAAA." (quotation marks omitted)).

*B. Class Certification*

We turn now to Plaintiffs' cross-appeal, which seeks re-
view of the district court's refusal to certify the class.

We review a district court's denial of a plaintiff's motion
for class certification for an abuse of discretion. *Messner v.
Northshore Univ. Healthsystem*, 669 F.3d 802, 811 (7th Cir.
2012). "If, however, the district court bases its discretionary
decision on an erroneous view of the law or a clearly errone-
ous assessment of the evidence, then it has necessarily
abused its discretion." *Id.*

*1. The Rule Against One-Way Intervention*

BeavEx's central contention on appeal is that the relief
Plaintiffs request—certification of the class—is barred by the
rule against one-way intervention.

The rule against one-way intervention prevents plaintiffs
from moving for class certification after acquiring a favora-
ble ruling on the merits of a claim.[3] *Peritz v. Liberty Loan
Corp.*, 523 F.2d 349, 354 (7th Cir. 1975) ("Inasmuch as the
plaintiffs here did not seek certification, and in fact affirma-

---

[3] This is not to say that *defendants* are precluded from seeking a disposi-
tive ruling on the merits prior to class certification, and we have looked
upon such a procedure favorably. *See Cowen v. Bank United of Texas, FSB*,
70 F.3d 937, 941 (7th Cir. 1995) ('The [defendant] elected to move for
summary judgment before the district judge decided whether to certify
the suit as a class action. This is a recognized tactic and does not seem to
us improper." (citations omitted)); *see also* Fed. R. Civ. P. 23(c)(1) adviso-
ry committee's notes to 2003 amendment ("The party *opposing* the class
may prefer to win dismissal or summary judgment as to the individual
plaintiffs without certification and without binding the class that might
have been certified." (emphasis added)).

tively sought resolution on the merits prior to certification in the face of objections by the defendants, they have themselves effectively precluded any class certification in this case."); *Wiesmueller v. Kosobucki*, 513 F.3d 784, 787 (7th Cir. 2008) ("[T]he plaintiff, as well as the district judge, put the cart before the horse, by moving for class certification after moving for summary judgment.").

The rule exists because it is "unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974). If an individual plaintiff were to get a favorable ruling on the merits prior to certification—and its corresponding notice and opportunity to opt out—then class members are incentivized to remain in the lawsuit to take advantage of the favorable ruling. If an individual plaintiff got an unfavorable ruling on the merits prior to class certification, class members are incentivized to opt out of the class to avoid application of the unfavorable ruling. Allowing class members to decide whether or not to be bound by a judgment depending on whether it is favorable or unfavorable is "strikingly unfair" to the defendant. *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1207 (7th Cir. 1971) (Stevens, J., dissenting).

In this case, Plaintiffs filed for partial summary judgment and class certification contemporaneously. In one order, the district court first denied class certification and then granted Plaintiffs' motion for partial summary judgment. Therefore, the rule against one-way intervention does not preclude class certification in this case because the district court properly ruled on class certification before granting partial summary judgment in Plaintiffs' favor.

It bears noting, however, that Plaintiffs, by moving for class certification and partial summary judgment at the same time, came dangerously close to precluding review of the class certification decision. Had the district court chosen to decide Plaintiffs' motion for partial summary judgment prior to deciding class certification, the rule against one-way intervention may have precluded certification.

We urge plaintiffs to exercise caution when seeking a ruling on the merits of an individual plaintiff's claim before the district court has ruled on class certification and given notice of the ruling to absent class members. *See Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 n.7 (1st Cir. 2000) ("[W]e do not pass upon the appropriateness of delaying a class certification ruling until after acting upon an individual plaintiff's summary judgment motion. We note, however, that this sequencing raises serious questions, and we urge district courts to exercise caution before deciding to embrace it." (citations omitted)).

*2. Merits of Class Certification*

Because the rule against one-way intervention does not apply to preclude class certification, we turn now to the merits of the district court's certification ruling. Plaintiffs argue that the district court abused its discretion in finding that common issues did not "predominate." We agree.

To be certified as a class action, the putative class must first meet the four requirements of Federal Rule of Civil Procedure 23(a): numerosity, typicality, commonality, and adequacy. *Messner*, 669 F.3d at 811. The district court found that Plaintiffs satisfied the requirements of numerosity, typicality, and commonality, and we agree with its assessment.

In addition, the class must satisfy the requirements of one of the three alternatives contained in Federal Rule of Civil Procedure 23(b). In this case, Plaintiffs have chosen to proceed with a class action pursuant to Rule 23(b)(3), which requires that they show "that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3) (emphasis added); *Messner*, 669 F.3d at 811.

Predominance is satisfied when "common questions represent a significant aspect of [a] case and … can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 815 (quotation marks omitted and alterations in original). We have said that "[t]he court should evaluate the evidence pragmatically … [to] decide whether classwide resolution would substantially advance the case." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 761 (7th Cir. 2014). This pragmatic review may warrant the court "tak[ing] a peek at the merits." *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010). In other words, "a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Mowbray*, 208 F.3d at 298. Predominance analysis "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).

Under the IWPCA, all individuals are considered to be employees of an employer, unless the employer can prove *all three* prongs of the independent-contractor exemption. To

satisfy the exemption, the employer must show that the worker is an individual:

> (1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract … and in fact; and

> (2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer …; and

> (3) who is in an independently established trade, occupation, profession or business.

820 ILCS 115/2. Because the test is conjunctive, if BeavEx cannot satisfy just one prong of the test, its couriers must be treated as employees. *Novakovic*, 820 N.E.2d at 973–74; *cf. Carpetland U.S.A., Inc. v. Ill. Dep't of Emp't Sec.*, 776 N.E.2d 166, 169–70 (Ill. 2002) (noting the conjunctive nature of the same independent-contractor exemption contained in the Unemployment Insurance Act, 820 ILCS 405/212).

There is no doubt that common evidence will satisfy the second prong of the test—whether the individuals "perform[ed] work which is … outside the usual course of business … of the employer." 820 ILCS 115/2. Prong two only requires common evidence about BeavEx's business model, which is applicable to all class members. BeavEx argues, and the district court found, however, that because individualized inquiries would be necessary to resolve prongs one and three of the IWPCA's test for employment, common issues cannot predominate.

The district court committed a legal error when it concluded that "[f]ailure to acknowledge the individualized inquiry required by the first prong because the second prong

can be decided through common facts would be the same as a ruling on the merits." *Costello v. BeavEx, Inc.*, 303 F.R.D. 295, 308 (N.D. Ill. 2014). The district court thought that it *could not* find that common questions predominate because the first prong contemplates individualized factfinding. That is incorrect.

There is no requirement that the district court blind itself to the conjunctive structure of the IWPCA's test for employment. Rather, "[i]n conducting this preliminary [predominance] inquiry … the court must look only so far as to determine whether, given the factual setting of the case, if the [plaintiff's] general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005). Under the IWPCA, if the employer cannot satisfy *just one prong* of the test, the inquiry into employment status ends. Because Plaintiffs have shown that common evidence will resolve prong two, they have made a prima facie showing that they *can* win their case based on evidence common to the class. That conclusion is not the same as saying, as the district court thought, that Plaintiffs *do* win their case, which is the merits determination. Plaintiffs have demonstrated that common questions predominate by making out a prima facie claim under the IWPCA based on evidence common to the class. Because the district court based its certification ruling on the erroneous assumption that the hypothetical individualized inquiry of prong one precluded a finding of predominance, it abused its discretion in denying class certification.

Moreover, certifying the class for purposes of prong two would substantially advance the litigation, regardless of whether the common evidence on prong two turns out in

Plaintiffs' *or* BeavEx's favor. If answered in Plaintiffs' favor, all of BeavEx's couriers would have to be classified as employees under the IWPCA, eliminating the need for any individualized factfinding. If answered in BeavEx's favor, BeavEx would not have to litigate its satisfaction of prong two against every individual plaintiff, promoting efficiency. We have looked favorably upon the use of such a hybrid procedure. *See, e.g.*, *In Re Allstate Ins. Co.*, 400 F.3d 505, 508 (7th Cir. 2005) (approving a procedure where the district court would decide whether a company-wide policy exists and then conduct individual hearings to determine whether an employee was affected by that policy as a "more efficient procedure than litigating the class-wide issue of [the defendant's] policy anew in more than a thousand separate lawsuits"). Regardless of which party wins, the common answer on prong two "represent[s] a significant aspect of [a] case and … can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 815 (quotation marks omitted and alterations in original).

The district court also mistakenly found that prong one could not be decided by common evidence. The district court thought that the first prong "so clearly requires a factual inquiry into the circumstances of each driver." That is not true. The independent-contractor exemption requires that the individual be free from control "in fact," which is evaluated by looking at twenty-five factors. *See Carpetland*, 776 N.E.2d at 374–83 (evaluating the same employment test under the Unemployment Insurance Act). The existence of factors to evaluate, however, does not defeat the ability of Plaintiffs to satisfy those factors by offering common evi-

dence.[4] In fact, the Illinois Supreme Court in *Carpetland* evaluated the twenty-five factors as they applied to "measurers" and "installers" based on common evidence, not to each individual measurer or installer. *Id.*; *see also Cohen Furniture Co. v. Ill. Dep't Emp't Sec.*, 718 N.E.2d 1058, 1062–63 (Ill. App. Ct. 1999) (evaluating control under same employment test of "carpet installers," not each individual carpet installer).

Finally, we find it telling that there is an inherent tension in BeavEx's position on class certification and its position on the merits of preemption. On one hand, BeavEx argues that class treatment is not warranted for its couriers because it must individually evaluate and classify each courier as an independent contractor "in fact." On the other hand, for purposes of preemption, BeavEx takes the position that every single courier would have to be reclassified from independent contractor to employee, revealing the more likely proposition that BeavEx thinks that uniform treatment of its couriers is appropriate. *See Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 602 (S.D. Cal. 2010) ("[I]t may be that [the defendant] believes its workers are in fact independent contractors *for reasons unique to each individual*, but it's more likely the case [the defendant] believes the independent contractor

---

[4] Plaintiffs attempt to "concede that control 'in fact' may require individualized assessments, and therefore waive any argument for class certification as to BeavEx's control 'in fact.'" (Appellee's Br. at 52.) "[A] court is not bound to accept a concession when the point at issue is a question of law." *Deen v. Darosa*, 414 F.3d 731, 734 (7th Cir. 2005). Because the question of whether common evidence could ever satisfy an inquiry "in fact" is a question of law, we reject Plaintiffs' concession. An inquiry as to control in fact could still be satisfied by the presentation of common evidence.

classification is universally appropriate. That runs at cross-purposes with the reason for objecting to class certification, which is that it's impossible to reach general conclusions about the putative class as a whole.").

Because the district court committed legal error when it thought that finding that prong two could be decided by common evidence was an improper decision on the merits, it abused its discretion in denying class certification on those grounds. Accordingly, we vacate the district court's denial of class certification and remand for further consideration.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of BeavEx's motion for summary judgment. We VACATE the district court's order denying class certification and REMAND for further proceedings consistent with this opinion.